## ⸰ O'CONNOR *v*. KNOXVILLE HOTEL CO.

### (*Knoxville.* October 27, 1894.)

1. CHANCERY PLEADING AND PRACTICE. *Relief.*

Chancery Courts may grant, under the prayer for general relief, any relief other and different from that specifically indicated and prayed, which is justified by the averments of the bill. (*Post, pp. 710-717.*)

Case cited and approved: Dodd *v*. Benthall, 4 Heis., 608.

2. CORPORATIONS. *Jurisdiction of Courts of Equity to wind up defined.*

Chancery Courts will not entertain suits of minority stockholders to wind up the affairs of a corporation and distribute its assets, upon the averment that they disapprove of the management, or consider the speculation a bad one. Their remedy is to elect new officers or to sell their shares and withdraw. (*Post, p. 711.*)

3. SAME. *Same.*

But, whenever, in the course of events, it appears beyond question that it is impossible to attain the objects for which the corporation was formed, and that failure is inevitable, Chancery Courts will, upon the failure and refusal of the officers and directors of the company to put an end to its operations and wind up its affairs, enjoin, at the suit of stockholders, the use and diversion of the company's property by the majority, and order its affairs to be wound up and its assets distributed among those equitably entitled. (*Post, pp. 711-713.*)

4. SAME. *Same. Case in judgment.*

A stockholder can maintain a bill, filed on behalf of himself and all other stockholders, against the corporation, its officers and directors, to wind up its affairs and distribute its assets, when the complainant avers that the corporation was formed for the purpose of erecting, furnishing, and operating a hotel at a cost of $200,000; that only $72,000 had been subscribed, of which part was uncollected and part insolvent, and that no further subscriptions could be had; that, for a period of four years, nothing had been done in the enterprise; that, in the meantime, the tide of business had receded, so that the site purchased was no longer desirable for hotel purposes; that taxes, interest, and expenses are rapidly absorbing the assets, which are entirely un-

O'Connor *v.* Knoxville Hotel Co.

productive, and that debts are pressing, without cash assets to 'meet them; that, in fine, the original scheme has become utterly impracticable; and that the directors have refused, upon proper application, to call a meeting of the stockholders to take steps to wind up the company's affairs and distribute its assets. (*Post, pp. 713–717.*)

Code construed: § 4168 (M. & V.); § 3431 (T. & S.).

---

### FROM KNOX.

---

Appeal from Chancery Court of Knox County. HENRY R. GIBSON, Ch.

TEMPLETON & CATES and WALTER M. COCKE for O'Connor.

LUCKY & SANFORD for Hotel Association.

WILKES, J. This bill is filed by a single stockholder, on behalf of himself and all other stockholders and creditors who might desire to come in thereunder, against the Knoxville Hotel Association, a corporation in Knoxville, Tenn., and the directors of the same, as well as certain stockholders, by name, and all others who might not choose to join as complainants.

The prayer of the bill is, that it be entertained as a bill to wind up a corporation, the purpose of which has become incapable of accomplishment, and for such other further and different relief as the facts stated in the bill may warrant.

The corporation directors and stockholders filed separate demurrers, but, in effect, the same. The demurrers were sustained by the Chancellor, and the bill dismissed, from which complainant appealed, and he has assigned as error the action of the Chancellor in sustaining the demurrers and dismissing the bill under the facts stated therein.

In his argument and brief complainant also contends that the corporation has ceased and failed to use its franchises for a number of years; that the object for which the charter was obtained was to erect, keep, and furnish a hotel, and nothing has been done in that direction, except the taking of the subscriptions and buying the property soon after it organized, and this makes a case of non-user in the sense of § 4168 of the Code (M. & V.), and under that section the complainant seeks to have the corporate property applied to the corporate debts, and any surplus divided among the stockholders. It is also argued that while complainant might have had an attachment under that section, still the provision for attachment is merely directory, and not mandatory.

It is also insisted that, although this statute is not referred to in the bill, and non-user is not charged in express terms, still the facts detailed make it one of non-user, and bring the case within the statute, and relief can be had under the general prayer for further or different relief. *Dodd* v. *Berthal*, 4 Heis., 608; Story's Equity Pleadings, Sec. 40.

The general rule applicable to such cases is laid down in the following language by Mr. Morawetz, in his work on Private Corporations:

"If share-holders in a corporation disapprove of the management, or consider their speculation a bad one, their remedy is to elect new officers, or to sell their shares and withdraw. They cannot insist on having the company's business closed, and assets distributed, against the will even of a single stockholder who wishes to have the business continued. It is clear, therefore, that the Courts cannot interfere at their suit, and order the company to be wound up." Morawetz on Corporations (2d Ed.), Sec. 283, and cases cited.

While this is the general rule, the same author states an exception to it, as follows:

"Whenever, in the course of events, it proves impossible to attain the real object for which a corporation was formed, or when the failure of the company has become inevitable, it is the duty of the company's agents to put an end to its operations and wind up its affairs. Under these circumstances, the majority would have no right to continue to use the common property and credit for any other purpose, because it would be impossible to use them for any purpose authorized by 'the charter. If the majority should attempt to continue the company's operations in violation of the charter, or should refuse a distribution of the assets, any share-holder feeling aggrieved would be entitled to the assistance of the Courts, and a de-

cree should be made ordering the directors to wind up the company's business, and distribute the assets among those who are equitably entitled." Morawetz on Private Corp., Sec. 284.

And again: "However, before the Courts can thus interfere with the management of a corporation, and order its business to be wound up, it must be shown very plainly that the business cannot possibly be carried on any further without a departure from the company's charter; and a Court of Chancery cannot impair the discretionary powers conferred upon the majority by the charter, and decide on their behalf whether the continuance of the enterprise be advisable as a commercial speculation. The rule was laid down by Lord Cairns, L. J., in the *Suburban Hotel Company's Case,* as follows: 'If it were shown to the Court that the whole substratum of the partnership, the whole of the business which the company was incorporated to carry on, has become impossible, I apprehend the Court might, either under the Act of Parliament or on general principles, order the company to be wound up. But what I am prepared to hold is this, that this Court, and the winding up process of the Court, cannot be used as a means of evoking a judicial decision as to the probable success or non-success of a company as a commercial speculation.'" Morawetz on Corp. (2d Ed.), Sec 285.

Beach on Private Corporations states the rule as follows: "Unless it appears beyond question

that the continuation of a profitable business cannot be had, the dissolution of a corporation not yet insolvent will not be decreed upon the petition of a minority of its stockholders. If, however, it is clear that the business cannot be profitably continued; the petition of a minority for a dissolution will be granted."

Spelling on Private Corporations, Section 100, states, in substance, that the Court would, in case the scheme was impossible, not allow the funds to be diverted to other purposes, but would enjoin such diversion at the suit of a stockholder, and, as incidental, give full relief by decreeing a settlement of the corporate liability and a distribution of the remainder among the stockholders.

As before stated, the cause comes to this Court by appeal, on the part of complainant, from the decree of the Court below sustaining the demurrer and dismissing the bill. We can therefore only look to the allegations of the bill to see whether complainant brings himself within the rules thus laid down. These allegations are taken for confessed upon the demurrer, and the question before us is their sufficiency, and not their truth, which is conceded for the purposes of the demurrer.

The bill alleges the incorporation of the company on April 22, 1889, and the registration of the charter and organization thereunder; that the scheme and purpose of the corporation was the purchase of certain very valuable property in the city of Knoxville, and the erection, maintenance,

and conduct of a "grand hotel thereon for the greater glory of Knoxville and the renown of her citizens. The best features of all other hotels were to be embraced, and every convenience, comfort, ease, and luxury which experience could suggest or modern invention provide were to be combined to make it a consummately perfect hotel." The bill proceeds:

"In summer its flower-covered roof was to eclipse the hanging gardens of Babylon; in winter its rose-lined inner court was to rival the vale of Cashmere. It was not to depend on ordinary patronage, but was, in its appointments and attractions, to be so irresistible that guests would crowd to it from every point of the compass, winter and summer, in a constant stream of custom and profit.

"Subscriptions were solicited and obtained to the extent of $72,000. Knox County was induced to let the corporation have its old court-house lot, and did so upon an assurance that, within a reasonable time, a hotel, to cost not less than $200,000, would be erected thereon, and a deed was made, retaining, however, a lien for the purchase-money, $8,000 of which was to be paid thirty months after the twenty-fourth of January, 1890. Contemporaneously with the delivery of this deed, a penal bond was executed by the hotel company, well secured by personal indorsement, conditioned to erect the hotel within a reasonable time, and at an expense of not less than $200,000. Other valuable property contiguous was added, which has all been paid

for. Complainant sold the corporation a lot for $3,000, upon the assurance of the company that its plans were perfected upon this scale, and would benefit his contiguous property. One thousand dollars of the amount was paid him in cash, and notes executed for the balance, but, upon repeated appeals to his patriotism and pride as a Knox-villian, he surrendered these notes, and took $2,000 of stock in the company instead."

The bill continues: "The '*Grand Hotel*' has proven 'grand' only as a *failure*. The enterprise was *moribund* from the first. The plan was impracticable in its conception, and is now manifestly incapable of execution. Not a dollar of subscription in addition to the seventy-two thousand dollars has been obtained for four years, and none can now be procured. Twelve thousand dollars to fourteen thousand dollars of the subscriptions already obtained are reported by the treasurer of the corporation as insolvent. Thirty-eight thousand dollars of the amount subscribed have been paid up, thirty-one thousand nine hundred and fifty dollars have been expended, and the balance has been dissipated, and there are virtually no funds in the treasury; the property is yielding no income, and is being consumed in interest on purchase-money, expenses, and taxes; population and business have, to a large extent, left that part of the city, and are daily moving away from the locality, and the site is now on the verge of the city and unsuitable for a hotel site. So that the plan, purpose,

and scheme of the corporation have become manifestly impossible of performance, and business prudence and the necessity of the case require that the property be sold in lots, the debts of the concern paid, and what remains divided among the stockholders.

" Complainant further states that he applied to the directors to call the stockholders together to discuss the propriety of such action, which request was declined. In the meantime, the county of Knox has directed the purchase-money due it to be collected and the liability on the bond enforced."

These are the allegations of the bill, which, so far as they allege facts, and not inferences or opinions, must be taken as true on demurrer. Stripped of all extravagant expressions, the allegations of the bill are that the scheme was the erection, furnishing, and operating a hotel, at a cost of not less than two hundred thousand dollars, which would benefit all property contiguous or near to it; that only seventy-two thousand dollars has been subscribed, and no further subscriptions can be obtained; that for about four years nothing has been done in the prosecution of the enterprise; that, in the meantime, the tide of business and population has moved away, so as to make the site no longer desirable for hotel purposes; that no more money can be enlisted in the enterprise; that taxes, expenses, and interest charges are absorbing the assets, and that debts are pressing, without cash assets

to meet them; and that the original scheme is now impossible of consummation.

In such case, it will not do to say that complainant has his remedy to sell out his stock. No man of ordinary business sagacity would buy, except at a sacrifice, under such circumstances, and the only alternative left is to sit still and await future developments that may perhaps change the situation or wind up the business. We think the case made in the bill entitles the complainant to relief, on common law as well as statutory grounds. What different aspect may be put on it by answer and proof we cannot anticipate, but complainant, under his showing, is clearly entitled to an answer and relief, and the decree of the Chancellor is reversed, and cause remanded to be further proceeded in. Appellees will pay costs of appeal.