ARENTS et al. v. BLACKWELL'S DURHAM TOBACCO CO. et al.

(Circuit Court, E. D. North Carolina. April 27, 1900.)

No. 225.

1. CORPORATIONS—DISSOLUTION—JURISDICTION OF COURT OF EQUITY.

While it is the general rule that, in the absence of statutory authority, a court of equity is without jurisdiction to decree the dissolution of a private corporation which is a solvent and going concern, and to that end sequestrate its property, and appoint a receiver therefor, yet such court may always grant equitable relief against such a corporation whenever a sufficient case for such relief is shown, upon the ordinary principles of equity jurisprudence; and such a case authorizing dissolution and the appointment of a receiver is made where it is shown that the affairs of the corporation are not satisfactory, that it is in the midst of, or threatened with, disaster, or when further prosecution of its business will lead to loss and insolvency, and a large majority of its stockholders desire its dissolution.

2. SAME—THREATENED HOSTILE ACTION BY STOCKHOLDER—APPOINTMENT OF RECEIVER.

Complainants were the owners of more than 99 per cent. of the $4,000,-000 of capital stock of the Blackwell's Durham Tobacco Company, a corporation engaged in the manufacture and sale of tobacco, the value of the property of which consisted largely in its good will and in the brand it owned and used upon its product. It was alleged and admitted that one of the defendants, who was a politician of prominence in the state, and had recently purchased a single share of stock in the corporation, publicly announced and published his intention to secure the passage of a bill at the next session of the legislature forfeiting the charter of the corporation, and providing for the winding up of its affairs by trustees therein named, and, failing to secure the passage of such bill, to make the question a political issue in the state. It was further alleged that a fair offer had been made for the property and good will of the company, which complainants desired to accept, but that such defendant refused to consent to the sale, or to sell his own stock at any price. Held, that upon the facts admitted it was apparent that the threatened action of the defendant, whether successful or not, would practically destroy the business of the company, and greatly depreciate the value of its property, and that under such circumstances the court was authorized to appoint a receiver, with a view to its dissolution, and the sale of its property for the protection of all the stockholders.

In Equity. Suit by stockholders for dissolution of a corporation. On motion for appointment of receiver.

W. W. Fuller and J. Parker, for complainants.

J. S. Manning, H. A. Foushee, and W. B. Guthrie, for defendant W. A. Guthrie.

SIMONTON, Circuit Judge. This cause comes up on the return to a rule to show cause why a permanent receiver should not be appointed for the Blackwell's Durham Tobacco Company, a corporation incorporated under the laws of North Carolina. The bill is filed by George Arents and others, stockholders in the Blackwell's

Durham Tobacco Company, against a number of other stockholders in the same company, among whom are W. A. Guthrie and Kate A. Watkins, who are the only residents and citizens of North Carolina, the complainants being citizens and residents of other states. The bill sets out the incorporation of the company first under an act of the legislature January 24, 1883, ratified by an act of January 11, 1887, and then under chapter 103 of the Acts of 1891; that the company is engaged in the business of manufacturing tobacco, and selling its products throughout the United States and foreign countries, its principal place of business being in Durham, N. C.; that the total authorized capital of the corporation is $4,000,000, divided into 160,-000 shares of par value of $25 each, and that complainants hold 159,-309 shares. By amendment to the bill they aver: That they now hold 460 shares more, in all 159,769 shares; and that the defendant W. A. Guthrie holds 1 share, and Mrs. Kate A. Watkins 36 shares; the other shares being held by other stockholders, whose residences are not known. That the American Tobacco Company has offered to purchase the entire property of the said Blackwell's Durham Tobacco Company as a going concern for the sum of $2,800,000, leaving the offer open for acceptance for 90 days from February 28, 1900, provided that in the meantime the good will and business of the Blackwell's Durham Tobacco Company be then unimpaired; and that the American Tobacco Company is a perfectly solvent corporation, able to keep and make good this offer. That it is impracticable for the Blackwell's Durham Tobacco Company to accept this offer and to make this sale, for several reasons stated. It is impossible to reach all the outstanding stockholders, and secure their assent and approval to such sale. The complainants hold such relations to the American Tobacco Company, being officers and employés thereof, that their action in this regard would be subject to criticism and suspicion. That one stockholder—W. A. Guthrie—has expressed his determined opposition to such a sale, and so a cloud would be thrown upon any title which the American Tobacco Company would obtain. That in this condition of things, the approval and order of this court is essentially necessary to carry out such a sale. The bill then states the reasons why this court should intervene and grant the relief prayed for. These are that the price offered was a fair one, for the reason that a late president of the company and many large stockholders had sold their shares therein at a price the equivalent of that offered; that, in any event, this offer could be used as an upset price if the court preferred a public to a private sale; that holding, as complainants do, 99½ per cent. of the whole stock, and desiring to withdraw from their business, the remaining stockholders could not conduct it profitably; that the stock of the company having no fixed marketable value, and not being listed on any stock exchange, the complainants, if put to the alternative of a sale of their stock, would be compelled to sell it at a great sacrifice, whereas, the present offer would furnish sale at full value. The last reason for the filing of the bill is this: W. A. Guthrie, a stockholder, holding one share, purchased after complainants had become holders of more than 95 per cent. of the stock, purchased this one

share for the purpose of doing all in his power to harass, annoy, vex, and destroy the corporation, and make the management of its business impossible; that Mr. Guthrie is a lawyer and politician of prominence in North Carolina, and that he has published in its newspapers his purpose of introducing a bill in the legislature of North Carolina, at its approaching session in June next, to repeal the charter of the said corporation, and to put it in the hands of trustees to wind it up; that he also threatens, if this attempt should fail, to carry the question into the politics of the state, and to agitate it until he succeeds. The bill is accompanied by an exhibit containing a copy of the proposed bill and an interview with Mr. Guthrie, in which he expresses sentiments hostile to this corporation and his determination to destroy it. The bill then proceeds:

"(6) That in view of the allegations hereinbefore made, and particularly said offer to buy the good will, business, and property of said Blackwell's Durham Tobacco Company, and in view of the subsequent allegations of this paragraph of the bill, it is to the interest of all the stockholders of Blackwell's Durham Tobacco Company that the affairs of said company be wound up, and its property be sold, because: First. There is an offer by a solvent party to pay a fair price in cash for said property, and as to this your orators would show to this honorable court that in December, 1898, one J. S. Carr, who had been the president of said Blackwell's Durham Tobacco Company, and owner of about one-half of its stock, ever since the organization of said corporation, and one S. H. Austin, who, since the organization of said corporation, had been its vice president, and all the other large and managing stockholders, including every director and officer of the company, and many other stockholders, sold their entire stock holdings in the said Blackwell's Durham Tobacco Company at the price of $17 per share; that said principal and managing stockholders, officers, and directors had full and adequate information to form a correct and accurate judgment of the actual value of their property, judged by the then earning power, and the reasonable prospects of the business of the said corporation; that the offer of the American Tobacco Company is equivalent to $17 per share for all the stock of the said Blackwell's Durham Tobacco Company, and, if it is accepted, and the sale consummated at that figure, the other smaller and uninformed stockholders would suffer no injustice or loss, since they, and each of them, would receive the same price for his stock as the larger and managing stockholders regarded as a fair and sufficient price for theirs. Second. The sale of the business and property of Blackwell's Durham Tobacco Company could do no harm to any stockholder if conducted as herein prayed, for, under the sale as herein prayed, there would be a guarantied bid assuring to each stockholder the actual value of his stock according to the estimate put on such stock by the large and managing stockholders of said company when valuing and selling their own; and even this price would not be binding on this court, but the said property would be put up and sold at the highest obtainable price, with $2,800,000—or, at the rate of $17 per share—as the upset price and bid. Third. Your orators, owning and holding more than ninety-nine and one-half per cent. of the stock of said Blackwell's Durham Tobacco Company, desire the business of said company stopped and wound up, and that their investment be taken out of the said corporation, and the one-half of one per cent. left after withdrawal of the said ninety-nine and one-half per cent. represented by your orators, to wit, the stock owned and held by the defendants, and all other stockholders in Blackwell's Durham Tobacco Company, would be inadequate to the conduct of the business of said corporation, and incompetent of conducting it; that it is, therefore, impracticable for said business to be properly and profitably conducted. In this connection your orators would show to the court that at the time of the sale of stock by J. S. Carr and others in December, 1898, as hereinbefore alleged, all of the stockholders having a practical knowledge of the tobacco business, and of the past business of said corporation, ceased their connection therewith, and that the only · stockholders in said

corporation at present with any practical knowledge of the tobacco business. or capable of making a success of said business, are among your orators; that your orators therefore allege that the less than one-half of one per cent. of the stockholders of Blackwell's Durham Tobacco Company besides your orators are not only incapable of conducting the business of said corporation because of their inadequacy of investment or interest, but your orators would further show that there is no one among the remaining stockholders of said company with the ability and experience in the tobacco business to properly or profitably conduct the business of the said Blackwell's Durham Tobacco Company, which it was chartered to conduct, and without which the investment of all the stockholders of the said Blackwell's Durham Tobacco Company would be absolutely destroyed. Fourth. Said stock in said Blackwell's Durham Tobacco Company is not listed on any stock exchange, and has no well-defined market value, nor, so far as your orators can ascertain, any market value at all; that on this account your orators cannot withdraw from said corporation by a sale of their stock without very great loss; that by a sale of the property of said Blackwell's Durham Tobacco Company, even at the price offered by the American Tobacco Company, and if there is no other bid, your orators would receive for their aggregate holdings in said company the sum of $2,708,253, less their proportionate part of the costs of this proceeding, whereas by a sale of their stock on the market your orators verily believe that they would not realize more than $200,000 for the same, and a proportionate reduction would result to the stock of other stockholders of Blackwell's Durham Tobacco Company; that in stating the estimated selling value of their stock as aforesaid your orators are merely giving an estimate, and do not mean to say that they could realize even the sum of $200,000 for said stock, for, indeed, they do not know that they could sell the same at all, but they do know that they could not, by any attempted sale of said stock, realize anything like as much therefor, and on account of their investment, as they would by a winding up of said corporation, and the sale of its assets, as prayed herein; that the condition herein alleged as to your orators applies equally to all other stockholders, and in truth your orators believe that an attempted sale by them of their stock in said corporation would so depress the best obtainable price for said stock that the other stockholders would hardly be able to sell their holdings at all. Fifth. The interest and investment of your orators and all other stockholders in said Blackwell's Durham Tobacco Company are menaced by a threat on the part of the holder of one share of stock of said company, as follows: The defendant W. A. Guthrie is a stockholder of said Blackwell's Durham Tobacco Company, holding one share of its stock, purchased by him after your orators had acquired more than ninety-five per cent. of all the stock of said company, and when he, the said Guthrie, had no interest in the said corporation, and purchased by him for the purpose of doing all in his power to harass, annoy, vex, and perhaps make impossible the management of the business of the said Blackwell's Durham Tobacco Company. The said Guthrie is a lawyer and politician of more or less prominence in North Carolina, and he has caused to be published in newspapers in North Carolina an advertisement of his purpose to cause the introduction into the legislature, at its session beginning June, 1900, of a bill to repeal the charter of the said Blackwell's Durham Tobacco Company, and to appoint trustees to wind up the affairs of said corporation. In order that this honorable court may know the effect and purpose of said proposed legislation, your orators annex to this bill as 'Exhibit A' a copy of the repealing statute proposed and purposed to be introduced by, or at the request of, the said W. A. Guthrie, together with what purports to be an interview between the said Guthrie and a reporter of the News and Observer, a newspaper of general circulation in North Carolina, published at Raleigh, N. C., which purported interview your orators verily believe to be a true report, and to present truthfully and accurately the purpose and effect of the conduct of the said Guthrie; that, as will be seen by inspection of said Exhibit A, the danger menacing your orators and all other stockholders of said Blackwell's Durham Tobacco Company arises from the avowed purpose and intent of the said Guthrie, a stockholder in said company, to render valueless the stock of the said company; that this stock, the investment of your orators and the other stockholders, would be rendered comparatively valueless, or at least

much less valuable than at present, by the proposed legislation, for the reason that a great deal of the value of said stock comes from the value of the brand 'Durham Bull' owned and controlled by said Blackwell's Durham Tobacco Company, and the good will of said business, and, while the said brand and good will are now of very great value, they would not be so after the business had been run and conducted, for even a little while, by trustees such as are mentioned in said bill proposed by said Guthrie,—trustees entirely incompetent for the conduct of the business, unfriendly to the interests of the stockholders of said company, and owing their appointment, and therefore allegiance, to one who desires, and publicly and ostentatiously desires, the depletion and destruction, instead of the enhancement and protection, of the property of said Blackwell's Durham Tobacco Company, the investment of your orators and the other stockholders; that your orators hesitate to believe that the legislature would pass a statute so unjust as that mentioned in Exhibit A hereto, especially when its introduction and promotion are induced by such unworthy motives as those avowed by the said Guthrie, the promoter thereof, as shown in said Exhibit A, but your orators nevertheless desire to call to the attention of the court that the said Guthrie is, as heretofore said, a politician of more or less prominence, with his present affiliations, perhaps, with that political party at present dominant in the legislature of North Carolina; that there exists in North Carolina at present a prejudice against the Blackwell's Durham Tobacco Company and against the said the American Tobacco Company, and against, indeed, all corporations, and especially all large corporations, which prejudice has been created and so strengthened by partisan newspapers and other political influences as to make the passage of the bill mentioned in said Exhibit A not altogether unlikely; that on account of the extreme sensitiveness to injury of a great deal of the property belonging to said Blackwell's Durham Tobacco Company, to wit, the trade-mark and good will of said business, the said menace is a serious one, and, as your orators are advised, believe, and insist to this court, this menace alone would authorize this court to the exercise of its equitable jurisdiction, to the end that the property of the said corporation should be sold at the highest possible price, and that its affairs pending such sale should be run and conducted so as to enhance as much as possible the value of the property of the said corporation, and the consequent value to your orators and the other stockholders of their investment in the stock of the said corporation. Sixth. Said threats and menaces to the interests of your orators and all other stockholders of said Blackwell's Durham Tobacco Company shown or indicated in Exhibit A hereto are made by W. A. Guthrie, who is a stockholder in said company, and therefore entitled to a voice in the conduct of its affairs. As shown in said Exhibit A hereto, the said Guthrie has indicated that he will never, as a stockholder, consent to a sale of the assets of said Blackwell's Durham Tobacco Company, nor admit that the same can be sold without his consent, nor agree to any other policy desired by the holders of the majority of the stock of said Blackwell's Durham Tobacco Company, nor will he sell his one share of stock, even if he were offered $15,000,000 for it, he having already, as he says, received an offer of an amount in excess of the actual value of said share; that, as further indicated by the said Guthrie, and as shown in Exhibit A, he, the said Guthrie, has definitely concluded to harass, vex, threaten, and attempt to destroy the business in which he is a stockholder, as aforesaid, at least as often as the legislature of North Carolina meets; that this purpose and animus revealed in the said Exhibit A makes clear the continued danger the said business is in so long as it is conducted as at present, and it also makes clear the irreconcilable difference and antipathy existing between the said Guthrie on the one part, and the interests of all the other stockholders on the other, which danger, and irreconcilable difference and antipathy make it utterly impossible to carry on either properly or profitably the business of said Blackwell's Durham Tobacco Company as at present constituted; that is, as a business in which your orators and the said Guthrie are jointly interested. Wherefore your orators verily believe, and on said belief allege, that the best interests of the said Blackwell's Durham Tobacco Company and all of its stockholders would be served by the sale of the property of the said corporation, and its winding up and dissolution, and that the preservation of the property of your orators and of the other stockholders of

the said Blackwell's Durham Tobacco Company from irreparable injury demands and makes necessary such sale, and the aid and protection of this court in making such sale, and in the preservation and maintenance of said business in the meantime."

The prayer of the bill is:

"(7) That as your orators are advised, and verily believe, the said winding up, sale, and dissolution of the said Blackwell's Durham Tobacco Company can be better, and ought to be, done by a receiver appointed by this court, for that: First. The said property would thus be sold with an indefeasible title to the purchaser, and, being thus sold free from any cloud or danger of vexatious litigation, the said property would bring the highest possible price. Second. This court would protect the interests of the stockholders other than your orators, and in the exercise of its equitable jurisdiction would see to it that the said stockholders receive the highest possible price for their investment. Third. By the appointment of a receiver, and the taking into the custody of this court of the property of the said Blackwell's Durham Tobacco Company, the threatened destruction of the property of your orators and all other stockholders of Blackwell's Durham Tobacco Company through the appointment of incompetent or unfriendly receivers or trustees would be avoided and escaped. Fourth. The receiver of this court, appointed by it, and under bond to it, would be more competent to receive and distribute that part of the purchase money arising from said sale that is going to the stockholders other than your orators than would the corporation itself, or liquidators of its appointment."

Upon the filing of this bill a temporary receiver was appointed with the usual form of an injunction and rule issued requiring all the defendants on a day certain to show cause why the receivership be not made permanent. Only one of the defendant stockholders —W. A. Guthrie—has made return. He has filed an answer, and uses that as his return. The corporation has answered, concurring in the averments and prayer of the bill. The answer of W. A. Guthrie admits the corporate character of the Blackwell's Durham Tobacco Company; admits that complainants are legal holders of stock therein; avers that they are officers and employés of the American Tobacco Company, and that the company is the real owner of the stock standing in the name of complainants; that under its charter the American Tobacco Company cannot purchase or hold stock in any other corporation; admits that he is the owner and absolute holder of one share in the corporation; denies that the bid of the American Tobacco Company is binding upon it, or that it can be enforced in this suit, to which it is not a party; admits that it is a solvent company, but avers that purchasing, as he alleges, the stock in the Blackwell's Durham Tobacco Company, through and in the name of its agent, it gave much more than $2,800,000, to wit, $6,000,000; denies the right of the complainants, a majority of stockholders, to direct a conveyance and sale of the property and assets of the Blackwell's Durham Tobacco Company. He denies the jurisdiction of this court to render the relief asked, for any of the causes, stated, inasmuch as the Blackwell's Durham Tobacco Company is a solvent going corporation, whose charter has not expired and has not been forfeited; that no corporation in North Carolina can be dissolved by proceedings at the instance of the company, or a corporator, or a creditor, except for one or more of four causes,—abuse of its powers, nonuse of its powers for two years, insolvency, convic-

tion of a criminal offense (if such offense be persistent); and that with these exceptions the only authority to dissolve a corporation, distribute its assets, and repeal its charter lies in the legislature. He avers that no meeting of the corporation has been held to consider the plan proposed by complainants, and, if such meeting were held, he would oppose it, for the following reasons, which he addresses to the conscience of the court sitting in equity: (1) The American Tobacco Company had no authority to buy this stock, held for it by complainants. (2) That this attempt to purchase the property, assets, and good will of the Blackwell's Durham Tobacco Company is with the design of discontinuing its operations, dissolving the company, and destroying the stock of the minority stockholders,—a scheme never contemplated in the formation and conduct of the said Blackwell's Durham Company. (3) That complainants do not come in with clean hands, but seek to procure a sale with unseemly haste, before the legislature of North Carolina can meet and consider the propriety of repealing the charter of the Blackwell's Durham Tobacco Company. He admits his purpose to petition the legislature as averred, and he claims this as his right as a citizen, with no previous knowledge of the action which will be taken thereon, well knowing, however, that the majority of the citizens of the state are opposed to trusts and monopolies. (4) The answer then goes into a minute account of the acts of the American Tobacco Company, averring that they are with the design to secure a monopoly in the manufacture of tobacco, to control the purchase and sale thereof, and to drive out all other competitors by the purchase or merger of all competing companies. The result of this is the increase of price of tobacco to consumers, and a great decrease in its value to producers. That the dominating reason for the purchase of the entire plant, property, and good will of the Blackwell's Durham Tobacco Company is that this company is really the only formidable competitor left of the American Tobacco Company, and that this company is determined to suppress it. The answer then denies that the defendant has brought any action against the defendant company, and says that all that he has done is to declare his purpose—call it, if one will, a threat or menace—to petition the legislature to repeal the charter of the Blackwell's Durham Tobacco Company.

Many of the issues raised at the hearing of the return need not be discussed now. The Blackwell's Durham Tobacco Company is a solvent, going corporation. Can this court, under the circumstances stated, appoint a receiver for this corporation and take proceedings looking to its final dissolution? The general rule as laid down by text writers is that the general jurisdiction of equity over corporations does not extend to the power of dissolution of the corporation or to the winding up of its affairs, sequestrating the corporate property and effects, and in that connection appointing a receiver, unless such jurisdiction is expressly conferred by statute. Beach, Mod. Eq. Jur. § 967; 1 Cook, Stock, Stockh. & Corp. Law, § 629. The reason of the rule is stated in Silver Mines v. Brown, 19 U. S. App. 209, 7 C. C. A. 415, 58 Fed. 647, 24 L. R. A. 778:

"A court of equity, however, has no power to interpose its authority for the purpose of adjusting controversies that have arisen among the shareholders or directors of a corporation relative to the proper mode of conducting the corporate business, as it may do in case of a similar controversy arising between the members of an ordinary partnership. Corporations are, in a certain sense, legislative bodies. They have a legislative power when the directors or shareholders are duly convened that is fully adequate to settle all questions affecting their business interests or policy, and they should be left to dispose of all questions of that nature without applying to the courts for relief. A shareholder in a corporation cannot successfully invoke the power of a chancery court to control its officers, or board of managers, or to wrest the corporate property from their charge through the agency of a receiver, so long as they neither do nor threaten to do any fraudulent or ultra vires acts, and so long as they keep within the limits of by-laws which have been prescribed for their governance. If in either of the cases last specified a shareholder is nevertheless dissatisfied with the business policy that is being pursued or the methods of corporate management, he must seek redress within the corporation, in the mode prescribed by its charter and by-laws, rather than by an appeal to the courts."

But this statement of a general rule does not meet the question made in the bill upon circumstances admitted in the answer. This is not an application to stop a going corporation in a successful career, wind up its business, and distribute its assets among the corporators. The bill alleges, and the answer admits, that among the stockholders of this company there is a grave collision, not upon the business conduct of the company, nor as to the mode of conducting its operations, but as to its future existence; that a single stockholder, and he possessing but one share, has declared his fixed purpose to seek at the hands of the legislature a repeal of its charter, a termination of its existence, the winding up of its affairs by trustees, suggested in whole or in part by himself, one of whom bears his own name, presumably his kinsman. Not only so, but he has avowed his intention, if he fail in this application, to bring the question before the people of North Carolina; to agitate it on the stump, and to make it a question in politics. Whether he may succeed or whether he may fail, the same result will follow, so far as the interests of the corporation are concerned. With the well-known timidity of capital, its business must be injured, disorganized, and ruined. The good will of these manufacturing corporations, the brand which they use, are valuable portions of their assets. The threat of the dissolution and destruction of the company in itself will destroy the value of this good will. So the case presents itself thus: The company is seriously threatened with certain disaster in the near future. The interests of 99 per cent. of the stockholders are greatly in peril from the threatened action of one stockholder. This stockholder has declared that he will not part with his stock; that he holds it for one purpose only, and that is the destruction of the company, and embarking it on the sea of politics. This stockholder is not an obscure individual without influence or ability. He is a leader among his people, a man of character and a high order of ability, with great and deserved influence in a strong political party. His threat means and guaranties action. While the general rule as to the jurisdiction of a court of equity over solvent, going corporations is as stated supra, yet it is equally true that a court of chancery will

always grant equitable relief against such a corporation whenever a sufficient case for relief is shown upon the ordinary principles of equity jurisprudence. Silver Mines v. Brown, supra. A recognized ground of relief in equity is, when the affairs of the corporation are not satisfactory, when it is in the midst of or is threatened with disaster, when further prosecution of its business will lead to loss and insolvency. Hayden v. Directory Co., 42 Fed. 875; Treadwell v. Manufacturing Co., 7 Gray, 393. Private trading corporations like this at bar are created for the purposes of gain, the production of income; and when they cease to be profitable, or are exposed to danger of insolvency, the stockholders who have large interests at stake are not obliged to continue the business. As is well said in Treadwell v. Manufacturing Co., supra:

"By accepting a charter they do not undertake to carry on the business for which they are incorporated indefinitely, and without any regard to the condition of their corporate property. Public policy does not require them to go on at a loss. On the contrary, it would seem very clearly for the public welfare, as well as for the interest of stockholders, that they should cease to transact business as soon as, in the exercise of sound judgment, it is found that it cannot be prudently continued. If this be not so, we do not see that any limit could be put to the business of a trading corporation short of the entire loss or destruction of its property."

To the same effect is O'Connor v. Hotel Co., 93 Tenn. 716, 28 S. W. 308.

The text writers deduce the same conclusion from their examination of the cases. Beach, in his work on Private Corporations (volume 2, § 781) says:

"When a minority of stockholders oppose a surrender, it cannot be forced upon them by the majority, unless it be a case where it is plain that a continuation of the business to the expiration of the time fixed by the act of incorporation for corporate existence would result only in financial catastrophe, or in the failure of the object for which the corporation was created. In that event a majority only of the stockholders may surrender the charter and take steps to have the business wound up."

See, also, section 783.

Spelling, in his work on Corporations (volume 1, § 373) after stating the general rule, adds this qualification:

"But, if the corporation is an unprofitable or failing enterprise, then it seems it may make a sale of all the corporate property, with a view to dissolution."

Mr. Thompson, in his exhaustive work on Corporations (volume 4, § 4443), quoting the remark of an eminent lawyer sitting as a master in chancery, that "the contract between the parties in a corporation is that, so long as the affairs of a company are prosperous, it shall go on, unless all consent to the contrary," adds:

"But it is believed that this dictum is unsound when applied to a case where a majority of the stockholders elect to wind up the affairs of the corporation and distribute its assets; because, although the affairs of the corporation may at the particular time be prosperous, yet circumstances may exist rendering it probable that this prosperity will not continue; and whether such circumstances do exist, or are likely to supervene, is a question committed exclusively to the judgment of the majority. It is believed that no case can be found in which a court of equity has granted an injunction, at the suit of a minority stockholder against the majority, to prevent them from discontinuing the business of the corporation and winding up its affairs. The exercise of such a

power would be most extraordinary. It would be tantamount to compelling the specific performance of an agreement to form and carry on a corporation, extending over an indefinite period of time, and when, in the judgment of the majority, on a question of mere economy and propriety, on which their judgment ought to be conclusive, it has been found more expedient to discontinue the business."

Considering only the question of appointing a receiver, it is ordered that Percival S. Hill, Esq., heretofore appointed temporary receiver in this cause, be now appointed permanent receiver, with all the duties, powers, and responsibilities to said position pertaining, and that he conduct the business of the Blackwell's Durham Tobacco Company until the further order of the court. And it appearing that the replication has been filed in the cause, and that the same is at issue, it is further ordered that this case be referred to the standing master, Shepherd, and that he take testimony on the matters of fact alleged in the bill and not admitted by the answer, and that he report the same with all convenient speed to this court.