### POTTER et al. v. VICTOR PAGE MOTORS CORPORATION.

(District Court, D. Connecticut. March 14, 1924.)

No. 1694.

1. Courts ⚖️359—Federal court has jurisdiction under state law to appoint receiver for local property of foreign corporation.

Where, under the law of the state as declared by its highest court, the courts of the state have jurisdiction to appoint receivers for the property of a foreign corporation in the state, at suit of stockholders or creditors, a federal court in the state has the same jurisdiction.

2. Corporations ⚖️684—Stockholders' bill held to state a cause of action for appointment of receiver.

A bill by minority stockholders of a foreign corporation, alleging that the corporation has its plant, offices, and equipment in the state, that it has ceased to carry on its corporate business, and, though solvent, is without money or credit to continue its business or meet its debts as they mature, held to state a cause of action in equity for appointment of a receiver to conserve its property, liquidate its affairs, and distribute its local property.

In Equity. Suit by Leland D. Potter and others against the Victor Page Motors Corporation. On motion to dismiss bill. Denied.

Cummings & Lockwood and Walter N. Maguire, all of Stamford, Conn., for plaintiffs.

John A. Cornell, Jr., of Bridgeport, Conn., for defendant.

⚖️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

THOMAS, District Judge. The case is here on defendant's motion to dismiss a bill brought by minority stockholders in a foreign corporation, praying for the usual equitable relief and the appointment of a receiver over all its assets within this jurisdiction.

The material allegations of the bill are that the corporation was organized for the purpose of manufacturing automobiles with air-cooled motors, with a capital stock of 5,000,000 shares, of the par value of $1 each, all of which was issued to its president, Victor W. Page, in return for certain intangible assets, including patents and designs, and that the said Victor W. Page sold 1,500,000 of these shares to investors and gave the corporation 500,000 to be held as treasury stock.

The bill further alleges that the assets of the corporation are greatly in excess of its indebtedness, including a mortgage which fell due January 1, 1924, but that the corporation has not enough cash or other immediately realizable securities on hand to pay said mortgage or to conduct its business, and is and will be unable to obtain an amount sufficient for the payment of its indebtedness now due and owing, nor can it borrow funds with which to carry on its work.

It is alleged that since its organization the corporation has received about $416,489.67, of which $414,000 has been spent; that in spite of such enormous expenditures, only a nominal number of motor cars has been manufactured; that the corporation for some time past has ceased to carry on its corporate business: that its directors and majority stockholders have been acting for their own interests in a manner destructive to the corporation itself and of the rights of the other shareholders.

The bill then declares that there is dissension among the stockholders which may lead to litigation and to a waste and dissipation of the assets of the corporation; that it has been grossly mismanaged, and that the moneys realized from the sale of stock have not been economically or profitably expended; that, unless this court takes jurisdiction, individual creditors may immediately assert their rights in different courts, with the result that there will be a multiplicity of suits and a race of diligence, and the value of the property of the corporation will be largely dissipated and lost.

The bill prays that a receiver be appointed of all the assets of the corporation within the jurisdiction of this court, with power to institute all such suits as may be advisable for the proper protection of the property of the corporation; that the defendant's property be ordered to be sold at the proper time either as an entirety or otherwise. and the proceeds distributed among those entitled thereto as this court shall determine, or that the property of the defendant in whole or in part may be returned to it; that pending this suit the defendant and all persons acting for it be restrained from selling or in any way incumbering any of the property, except in the usual course of business; and that all creditors and persons having claims against the property be enjoined and restrained from instituting any actions against said corporation or from interfering with any of its property.

The motion to dismiss the bill is based upon two general propositions: First, that the court has no jurisdiction; and, second, that the

bill does not state a cause of action in equity—and they will be discussed in their order.

· [1] In considering the question of jurisdiction as presented on this motion, and for the purpose of considering the questions of law applicable to the facts, it must be noted and remembered that the bill alleges (and under the motion to dismiss, which is in the nature of a demurrer, we must take the facts pleaded to be true) facts which show that this suit is brought in the District Court of Connecticut by Connecticut stockholders against a Delaware corporation, which has its plant, office, and equipment in this state and within the jurisdiction of this court.

It is quite impossible to examine and analyze, in this memorandum, all of the cases cited by counsel in very exhaustive briefs, but it is sufficient to say that a careful reading of them all convinces me that the conclusion to be gleaned therefrom can be stated as follows: While this court undoubtedly has jurisdiction, in a proper case made out by the bill, to appoint a receiver over the property, in this state, of a foreign corporation, and to authorize a sale of its corporate assets, as well as a distribution of the proceeds, that jurisdiction is exercised only under exceptional circumstances, and where the bill alleges facts which clearly bring the case within one of the well-recognized exceptions. Mere allegations of conclusions are insufficient. I am satisfied that the above is a correct statement of the law laid down by the Supreme Court in Connecticut, as well as the law set forth in the decisions of the federal courts.

The question has been definitely determined by the Supreme Court of Errors of Connecticut in Low v. Pressed Metal Co. et al., 91 Conn. 91, 99 Atl. 1, L. R. A. 1917D, 291, and it was there held that for jurisdictional purposes no distinction can be drawn between the power to appoint a so-called ancillary receiver and the power to appoint an original receiver, and that, although the wisdom or propriety of appointing a receiver in the state court for the purpose of liquidating its business, before one has been appointed at the domicile of the foreign corporation, may be questionable, that does not affect the jurisdiction of the state court to make the appointment, because its powers emanate from the sovereignty which created the court, and not from the foreign state in which the corporation may happen to be located. On page 95 (99 Atl. 2) Mr. Justice Beach said:

"The common practice of appointing so-called ancillary receivers in such cases demonstrates that courts do have jurisdiction over the subject-matter of winding up the local business of foreign corporations in receivership proceedings, whether in a stockholders' suit or upon a creditors' bill. It would be an intolerable proposition to assert that any local business was beyond the original equity jurisdiction of our courts merely because it was conducted by a foreign corporation. The principle that courts will not interfere in what are vaguely called the internal affairs of a foreign corporation must yield to the larger and more important principle that all who choose to engage in business within the state, whether under a corporate franchise or not, necessarily subject such business to the jurisdiction of the courts as fully as if it were conducted by our own citizens or corporations."

And on page 97 (99 Atl. 3) the learned justice said:

"Therefore the admitted jurisdiction of our superior court to wind up the local business of foreign corporations in ancillary receivership proceedings is

an exercise of powers derived exclusively from the state of Connecticut, and in the absence of statute it is an exercise of the inherent powers of the superior court as a court of general chancery jurisdiction."

Judge McPherson, in an interesting opinion in Scattergood et al. v. American Pipe & Construction Co., 249 Fed. 23, 161 C. C. A. 83, sets forth clearly the law in the federal courts, and the conclusion here reached finds ample support in that case. After discussing the failure of the Supreme Court of the United States in Central Trust Co. v. McGeorge, 151 U. S. 129, 14 Sup. Ct. 286, 38 L. Ed. 98, to dismiss the bill of its own motion for want of jurisdiction, and drawing therefrom the inference that no one questioned the right, either in the court below or on appeal, of the United States court for the Western district of Virginia to appoint a receiver of a New Jersey corporation, sued by a New York plaintiff, the learned judge said (page 26 [161 C. C. A. 86]):

"But, without relying on the inference from these cases, let us consider the question on its merits. Under facts like the foregoing, does a District Court in Pennsylvania have power to appoint a receiver for a foreign corporation? In our opinion the answer should be yes; the reason being that the law of the state as interpreted by its highest tribunal has given that power to the local courts, and therefore according to the established rule a similar power may be exercised by the federal courts within the state. Clark v. Smith, 13 Pet. 195, 10 L. Ed. 123, and citations in 3 Rose's Notes (Rev. Ed.) 399."

And again on page 26 (161 C. C. A. 86), by way of conclusion, Judge McPherson said:

"We think these references are enough to show that a Pennsylvania Court (and therefore a federal court sitting within the state) may entertain a bill to appoint receivers for a corporation financially embarrassed; and, if this be true, the District Court had jurisdiction of the subject-matter of the present bill as well as of the defendant's person. Having thus complete jurisdiction over the cause, it had authority to decide all questions arising therein, and its rulings can be questioned only by those properly parties to the dispute."

Inasmuch as the law of the state of Connecticut, as interpreted by its highest court, has given power to its local courts to appoint receivers under the condition set forth in this bill, it follows that a similar power may be exercised by the federal court within the state of Connecticut.

Having shown that this court has jurisdiction, we now pass on to a consideration of the second question presented by the motion, and determine whether the bill states a cause of action, bearing in mind that the bill does not seek a dissolution of the corporation but only its liquidation.

[2] A careful reading of the bill discloses the fact that a number of grounds are urged for the appointment of a receiver, but only one need be here discussed, as I conclude that the allegations in the bill are sufficient to sustain at least one cause of action. It is alleged that the corporation has less than $2,500 in cash on hand; that it has not enough cash or immediately realizable securities on hand with which to conduct its business, and is and will be unable to obtain an amount sufficient for the payment of its indebtedness now due and owing, and

cannot borrow the money with which to carry on its work; that the defendant has not accomplished its corporate purposes, and there are no funds on hand at the present time to enable the corporation to effectually carry out its corporate purposes. As already noted, on a motion to dismiss, these allegations must be assumed to be true. What the evidence will show at final hearing is another matter, to be considered upon bill and answer and issue joined.

As examination of well-considered cases impels the conclusion that this court has inherent power to wind up and liquidate the local business and property of a foreign corporation where its failure has become inevitable as well as to appoint a receiver to accomplish that purpose. In Benedict et al. v. Columbus Construction Co., 49 N. J. Eq. 23, Chancellor McGill, discussing this subject, said on page 36 (23 Atl. 489):

"It is well settled that the shareholders in a corporation cannot extinguish its charter or dissolve it, and that a court of equity cannot dissolve it at their instance. In the absence of a statutory provision, the franchises can be declared forfeited and extinguished only at the suit of the state in an appropriate proceeding at law [citing cases]. If stockholders in a corporation disapprove of the company's management, which is conducted without fraud, or by action ultra vires, or in gross abuse of trust, or shall consider their speculation a bad one, their remedy is to elect new officers or sell their shares and withdraw. Where the question is one of more discretion in the management of corporate business by directors, or of doubtful event in the undertaking in which the corporation has embarked, remedy cannot be had by application to a court of equity. ° * * But where it plainly appears that the object for which the company was formed is impossible of attainment, it becomes the duty of the company's agents to put an end to its operations and wind up its affairs, and should they, even though supported by a majority of the shareholders, pursue operations which *must* eventually be ruinous, any shareholder feeling aggrieved would, upon plain equitable principle, be entitled to the assistance of this court, and a decree should be made compelling the directors to wind up the company's business and distribute the assets among those who are entitled to them, unless they can lawfully be used for other business purposes allowed by the charter [citing cases]."

In O'Connor v. Knoxville Hotel Co., 93 Tenn. 708, 28 S. W. 308, the Supreme Court of Tennessee said:

"In such case, it will not do to say that complainant has his remedy to sell out his stock. No man of ordinary business sagacity would buy, except at a sacrifice, under such circumstances, and the only alternative left is to sit still and await future developments, that may perhaps change the situation or wind up the business. We think the case made in the bill entitles the complainant to relief on common-law as well as statutory grounds. What different aspect may be put on it by answer and proof we cannot anticipate, but complainant, under his showing, is clearly entitled to an answer and relief."

In reversing the lower court for dismissing the bill for want of the same equity as is claimed here in the motion to dismiss, the Supreme Court of Alabama held in Noble et al. v. Gadsden Land & Improvement Co. et al., 133 Ala. 250, 31 South. 856, 91 Am. St. Rep. 27, that when a private corporation, though solvent, in that it owes no debts, is a failure, and the purposes for which it was organized are impossible of attainment, and its assets are being gradually sacrificed in the payment of taxes and expenses, the minority stockholders of such corporation can maintain a bill in equity to have the corporate

assets sold and the proceeds thereof distributed among the stockholders.

The same general principles of equity were applied by Judge Simonton in Arents v. Blackwell's Durham Tobacco Co. et al. (C. C.) 101 Fed. 338. After discussing (page 344) the general principle respecting dissolution and holding, that in the absence of express statutory authority vested in the court to appoint a receiver to take proceedings looking to its final dissolution, there is no power so to do, he says (page 345):

"While the general rule as to the jurisdiction of a court of equity over solvent, going corporations is as stated supra, yet it is equally true that a court of chancery will always grant equitable relief against such a corporation, whenever a sufficient case for relief is shown upon the ordinary principles of equity jurisprudence. Silver Mines v. Brown, supra. A recognized ground of relief in equity is, when the affairs of the corporation are not satisfactory, when it is in the midst of or is threatened with disaster, when further prosecution of its business will lead to loss and insolvency. Hayden v. Directory Co., 42 Fed. 875; Treadwell v. Manufacturing Co., 7 Gray, 393. Private trading corporations like this at bar are created for the purposes of gain, the production of income, and when they cease to be profitable, or are exposed to danger of insolvency, the stockholders who have large interests at stake are not obliged to continue the business. As is well said in Treadwell v. Manufacturing Co., supra: 'By accepting a charter they do not undertake to carry on the business for which they are incorporated indefinitely, and without any regard to the condition of their corporate property. Public policy does not require them to go at a loss. On the contrary, it would seem very clearly for the public welfare, as well as for the interest of stockholders, that they should cease to transact business as soon as, in the exercise of sound judgment, it is found that it cannot be prudently continued. If this be not so, we do not see that any limit could be put to the business of a trading corporation short of the entire loss or destruction of its property.' To the same effect is O'Conner v. Hotel Co., 93 Tenn. 716, 28 S. W. 308. The text-writers deduce the same conclusion from their examination of the cases."

Morawetz, in his work on Private Corporations, in section 283 (2d Ed.), states the general rule in the following way:

"If shareholders in a corporation disapprove of the company's management, or consider their speculation a bad one, their remedy is to elect new officers, or to sell their shares and withdraw. They cannot insist on having the company's business closed, and the assets distributed, against the will of a single shareholder, who wishes to have the business continued. It is clear, therefore, that the courts cannot interfere at their suit, and order the company to be wound up."

But in section 284 he states that this general rule is not without exception, and as it is the exception to the general rule which we are applying to the case at bar, I quote the section in extenso:

"Whenever, in the course of events, it proves impossible to attain the real objects for which a corporation was formed, or when the failure of the company has become inevitable, it is the duty of the company's agents to put an end to its operations, and to wind up its affairs. Under these circumstances, the majority would have no right to continue to use the common property and credit for any purpose, because it would be impossible to use them for any purpose authorized by the charter. If the majority should attempt to continue the company's operations in violation of the charter, or should refuse to make a distribution of the assets, any shareholder feeling aggrieved would be entitled to the assistance of the courts; and a decree should be made ordering the directors to wind up the company's business, and distribute the assets among those who are equitably entitled."

See, also, sections 411 and 412; Porter v. Industrial Information Co., 5 Misc. Rep. 262, 25 N. Y. Supp. 328.

In view of the law above quoted, I think that, as against a motion to dismiss, the bill sufficiently sets forth that the corporation has not and cannot obtain the capital with which to carry on the purposes for which it was incorporated, and that its purpose is impossible of attainment, and that these facts, as well as others, are sufficiently pleaded in the bill so as to bring the case within the rule set forth, supra. It follows, therefore, that the motion to dismiss is denied; and it is so ordered.

Pursuant to this order there will be a hearing on the appointment of a temporary receiver, which I will now assign in the City Hall, South Norwalk, on Friday, March 21, 1924, at 10 o'clock in the forenoon, without further notice to counsel.