STATE OF TENNESSEE, ex rel., et al. v. C. M. BREEDLOVE et al.—270 S. W. (2d) 582.

Eastern Section. November 6, 1953.

Petition for Certiorari denied by Supreme Court, May 21, 1954.

D. S. Beeler, of Rutledge, for appellants.

W. J. Barron and Paul P. Capps, both of Morristown, for appellees.

HOWARD, J.  This suit was filed in the name of the State of Tennessee, by the District Attorney General of the Second Judicial Circuit, on relation of five preferred stockholders who owned 70 shares of preferred stock of the Lake Haven Hospital, a domestic corporation incorporated in 1945, for the practice of Naturopathy.  The bill was filed under Section 9336, 9337, Williams' Code of Tennessee, with the five preferred stockholders joining on behalf of themselves and all other stockholders and creditors of the corporation.  Named as defendants were the said corporation and its officers, C. W. Breedlove and wife, Lucile Breedlove, President and Secretary respectively, and the trustees and beneficiaries of mortgages executed by the corporation on its property.  By Chapter 2, Public Acts of 1947, the practice of Naturopathy was prohibited in Tennessee, making the purpose for which the corporation was formed illegal.

The bill as amended alleges in substance that the defendant corporation has ceased to use its franchise, and is insolvent; that the defendant officers had issued to themselves stock of the corporation without either authority or consideration, and that said officers have fraudulently breached their trust by conveying to themselves the personal property and real estate which they are planning to sell and convey.  The bill prayed: (1) For an injunction to prohibit the sale of the property; (2) for an accounting; (3) for a liquidation of the corporation; (4) that the conveyance of said real estate to the defendant officers be set aside, and (5) that all property

be sold for the benefit of those entitled to the proceeds therefrom.

The defendant officers, acting for themselves as well as the corporation, interposed a demurrer to the bill which was overruled. Thereafter they filed their answer denying generally the frauds alleged against them. They admitted, however, that the title to the property of the corporation had been transferred to them, but averred they were holding it as trustees of the corporation. Later, an agreed order was entered for the sale of the real estate and certain personalty, which brought $20,002, and a receiver was appointed for the sale of remaining personalty, which brought $41, making a total of $20,043 for the sale of the corporation's assets. Out of this amount a commission of $2,000 was paid to the auctioneer, leaving a balance of $18,043.

Upon reference to the Master the indebtedness of the corporation, both secured and unsecured, was decreed to be $11,549.87. In addition several hundred dollars in taxes, expenses and fees were chargeable against the fund in Court, leaving less than $7,000, the amount originally paid in cash by the five preferred stockholders for their 70 shares of stock.

The Chancellor held that the defendant officers had fraudulently issued to themselves 530 shares of the Corporation's preferred stock, that said transaction was without consideration and void, and decreed that the remaining fund held in Court should be distributed pro rata to the five preferred stockholders. From the Chancellor's decree the defendant officers have perfected an appeal to this Court, and errors have been assigned challenging the Chancellor's decree.

The first assignment complains because the Chancellor

overruled the defendants' demurrer which contained three grounds, as follows: (a) That preferred stockholders cannot maintain a bill to wind up a corporation; (b) that the bill cannot be maintained because the corporation was not insolvent, and (c) that the Court was without jurisdiction.

The statement of the purposes of the bill heretofore made shows that these grounds of demurrer are without merit.

██ ██ The law is well established in this state that where a Corporation has ceased to function, or has become insolvent, or where it is impossible to attain the objects for which it was formed, a stockholder may maintain a suit to impound and distribute the corporate assets. Orman v. Bransford Realty Co., 168 Tenn. 70, 73 S. W. (2d) 713; O'Connor v. Knoxville Hotel Co., 93 Tenn. 708, 28 S. W. 308; Brown v. Morristown Co-Operative Stove Co., Tenn. Ch. App., 42 S. W. 161; Gibson's Suits in Chancery, 4th Ed., Sec. 898, pp. 729, 730; Code Sec. 9358; 13 Am. Jur., Sec. 1324, p. 1180, Sec. 1328, pp. 1182, 1183.

The second assignment complaining because the Chancellor sustained the bill to wind up the corporation is also without merit.

██ The record shows without dispute that the corporation had ceased to be a going concern, that the defendant officers had conveyed to themselves almost all of the assets, and that the corporation was in the process of being liquidated. The conveyance of the real estate to the defendant officers was without consideration and fraudulent, and for the protection of the creditors and bona fide stockholders it was necessary that the property

be impounded and the assets administered under the direction of the Court.

By the third assignment the defendants complain because the Chancellor permitted the complainants to amend their original bill alleging that the defendant officers ''did without any right, power or authority, wrongfully, wilfully and fraudulently issue or caused to be issued to themselves certificates for preferred stock and common stock in Lake Haven Hospital, Inc.'' Inasmuch as the amendment was germane to the purposes of the bill, this was not error, as the allowance of amendments to a complainant is within the sound discretion of the Chancellor, and his action will not be disturbed by the Appellate Court unless there was a clear abuse of discretion. Phoenix Ins. Co. v. Jordan, 28 Tenn. App. 11, 184 S. W. (2d) 721; Code, Secs. 10413, 10415, 10416; Gibson's Suits in Chancery, 4th Ed., Sec. 673, pp. 566, 567.

By assignments 4 and 5 the defendants complained that the Chancellor erred in overruling their exceptions to the Master's report because the complainants failed to prove the allegations of their bill.

On August 15, 1952, the Master reported in effect that he was unable to determine from the evidence in what manner the defendant officers had paid for the 530 shares of preferred stock issued in their names, or whether it was, in fact, paid for; but reported that the 70 shares issued to five other persons holding preferred stock had been paid for in full. Both complainants and defendants filed exceptions to this report.

The Chancellor overruled the exceptions of both parties, except to correct a clerical error pointed out by complainants, and confirmed the report. Thus, the Master's report, concurred in by the Chancellor, if supported

by material evidence, is conclusive here. Black v. Love & Amos Coal Co., 30 Tenn. App. 377, 206 S. W. (2d) 432; Code, Sec. 10620; Gibson's Suits in Chancery, 4th Ed., Sec. 620, p. 523.

The bill charged the defendant officers with fraudulently issuing the 530 shares of preferred stock to themselves without consideration, and their answer merely made a general denial of that charge without showing how the stock was paid for.

When the Master was ordered to hear proof and report as to whether the stock had been paid for, these defendants were out of the state, and though represented by local counsel, they failed to voluntarily appear and testify.

The Master reported this fact and the Chancellor entered an order that they appear before the Master and produce checks and vouchers to show payment for the stock.

In obedience to this order the defendant C. W. Breedlove appeared before the Master and gave his disposition, but he produced no checks or vouchers or records. His answers were evasive and do not show that the 530 shares of stock were ever paid for.

His deposition shows that the corporation issued its 600 shares of common stock for 25 acres of land for which he had agreed to pay only $3,250. This common stock was issued December 12, 1945, and the property was conveyed to the corporation January 8, 1946.

On December 12, 1945, the defendant officers issued to themselves 150 shares of the corporation's preferred stock, 100 shares being issued to Breedlove, and 50 shares to his wife, Lucile, and on July 29, 1946, an additional 380 shares of the preferred stock to Breedlove.

Breedlove testified that an accurate account was kept of all corporate meetings and that the minutes filed were a perfect record of all stockholders' meetings.

The first minutes were dated January 2, 1946, showing the organization of the corporation and the election of directors and officers. On January 17 following, pursuant to a resolution of the Board of Directors, the corporation borrowed $6,000 from the Hamilton National Bank of Morristown, upon a mortgage of its real estate. This amount was deposited in said bank to the credit of the "Lake Haven Hospital," and on the same date $3,500 of the money was checked out. On the next day, January 18, the remaining $2,500 was checked out, and the account was closed. At that time the corporation also had a bank account with the Citizens Bank & Trust Company of Rutledge, Tennessee, but neither of the above amounts was credited to that account or otherwise explained. There does appear credited to the Citizens Bank & Trust Company account on July 29, 1946, the sum of $5,218.85, which deposit was not explained, and it may have been a part of the proceeds of the above mortgage loan.

It further appears that on March 20, 1946, the corporation borrowed an additional $2,000 from the Hamilton National Bank of Morristown, by giving a mortgage on its personalty. At that time there was an account with said bank in the name of "Breedlove Clinic—C. W. Breedlove." This account had carried a substantial balance during the preceding months, but on March 20, when the above loan was deposited, there was a balance of only $23.50 in said bank.

On the other hand, the corporate minutes of January 2, 1946, show that the hospital building had been started and must have been nearing completion on March 20.

Breedlove testified that he paid for the material and labor which constructed the building, which apparently was true, as no claims were made against the corporation for those amounts. He testified that all his checks and records have been destroyed and he had no way of showing how much he paid out in constructing and equipping the hospital nor the cost of same. As he made no claim against the corporation, it is not unreasonable to conclude that the $7,000 received from the sale of the 70 shares of preferred stock and the $8,000 proceeds of the two loans fully repaid him.

The bill alleges that the 25 acres of land with its building was worth $12,000. At a well advertised auction sale the land and building brought $17,502.

From these facts it reasonably appears that the building was not worth more than $15,000, which amount the defendant Breedlove had already received, and there was no showing that the defendant officers ever paid anything for the 530 shares of stock issued to themselves.

▉ Nor do we think the rule announced in Standard Oil Co. of Louisiana v. Apex Oil Corporation, 190 Tenn. 376, 229 S. W. (2d) 775, applicable here. In that case the Court held that the funds in the hands of the Receiver should be divided equally among the stockholders. This holding was necessarily based upon the presumption that the stockholders had paid full value to the corporation for their respective stock. In the instant case the preferred shares of stock were issued to the defendant officers without consideration, and under the circumstances they would not be entitled to a pro rata distribution of the fund held by the Receiver.

▉ This Court is inclined to sustain the 6th assignment that the fee of $400 allowed the Receiver for taking

into possession and selling for $41 a few articles of personal property as being excessive. We think that $250 would be reasonable compensation for the Receiver for his services, and the decree will be modified accordingly.

It results that all assignments of error will be overruled and as modified the decree of the Chancellor will be affirmed at appellants' cost, and the cause will be remanded for the enforcement of the decree.

McAmis, P.J., and Hale, J. concur.