## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## MIDDLE DIVISION

## NASHVILLE. DECEMBER TERM, 1921.

NASHVILLE PACKET Co. *et al. v.* B. L. NEVILLE.

## (*Nashville.* December Term, 1921.)

1. CORPORATIONS. If Stockholder joined in bill could sue to dissolve, immaterial bill was not formally authorized and was signed for corporation without authority.

   If a stockholder, joined as a party complainant in a bill by a corporation, against the only other stockholder to wind up its affairs, was entitled to file such bill himself, it is immaterial that the bill was not authorized by resolution, and that it was signed for the corporation without authority by one who had been its president, but who owned no stock when it was filed. *(Post, pp*, 701, 702.)

2. CORPORATIONS. Dissension between stockholders held such as to justify intervention of equity and appointment of receiver to wind up affairs.

   Where the stock of a corporation is owned equally by two stockholders, and a controversy over their separate indebtedness to the corporation resulting in a personal attack by one or the other, and other circumstances indicate bad feeling between them, so that it is impossible for them to continue the business harmo-

(698)

Nashville Packet Co. v. Neville.

niously and successfully, *held* that equity will intervene at the suit of one of them and appoint a receiver to wind up its affairs. (*Post, pp.* 702, 703.)

Cases cited and approved: State v. Oudin, etc., 48 Wash., 196; Green v. National Advertising, etc., Co., 137 Minn., 65; O'Connor v. Knoxville Hotel Co., 93 Tenn., 708.

3. **CORPORATIONS. De facto dissolution · or winding up may be effected through chancery court.**

Though a *de jure* dissolution may be only on suit by the State or by following certain statutory procedure, a *de facto* dissolution or winding up of business and distribution of assets may be effected through the chancery court in other suits. (*Post, p.* 703.)

Case cited and approved: Parker v. Bethel Hotel Co., 96 Tenn., 252.

4. **APPEAL AND ERROR. Assignment held too general for consideration.**

In a stockholder's suit to wind up a corporation, an assignment that "the chancellor erred in not sustaining the defendant's exceptions to the clerk and master's reports filed in the cause and in confirming said reports as follows," several reports being set out, *held* too general for consideration. (*Post, p.* 704.)

5. **APPEAL AND ERROR. Assignment not pointing out record evidence indicating error should be overruled.**

An assignment that the chancellor erred in allowing certain claims against a corporation, where no reference is made to any portion of the record showing evidence indicating the error complained of, must be overruled. (*Post, p.* 704.)

6. **COSTS. Costs in suit for winding up should be divided between plaintiff and defendant stockholders.**

In a stockholder's suit to wind up a corporation and dispose of its assets, the costs should be divided between the two stockholders owning all the stock. (*Post, p.* 704.)

7. **APPEAL AND ERROR. Assignment of error in sale already made held to raise no practical question.**

In an action for winding up the affairs of a corporation, an assignment of error in ordering the sale of certain property *held* to raise no practical question after the sale was accomplished. (*Post, pp.* 704, 705.)

8. **APPEAL AND ERROR.** Concurrent findings of master and chancellor, supported by evidence, will not be reviewed.

In a stockholder's suit to wind up the affairs of a corporation, concurrent findings of a master and chancellor on questions of account, where sustained by the evidence, including the report of expert accountants, will not be reviewed upon appeal. (*Post, pp.* 705, 706.

Case cited and distinguished: State ex rel. v. Follis, 140 Tenn., 513.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County —HON. JNO. T. LELLYETT, Chancellor.

WALTER STOKES, for appellant.

Wm. A. GUILD, for appellee.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought in the name of the Nashville Packet Company and Paul M. Ryman against B. L. Neville to wind up the affairs of the Nashville Packet Company. It appeared from the bill that Ryman and Neville each owned one-half of the stock of the corporation, and it was averred that Neville had been guilty of various misdeeds in connection with the corporation's affairs, and that the relations between Ryman and Neville had

become so hostile as to make it impossible for them to carry on this business. There were other charges in the bill which we need not notice.

Neville answered, and, generally speaking, denied the material averments of the bill, and denied the necessity and propriety of winding up the corporation.

The chancellor appointed a receiver for the corporation, ordered its property sold during the course of the litigation, and directed an account to be taken of the corporation's business, particularly the state of the account between Ryman and the corporation and Neville and the corporation. The master reported both of these gentlemen to be indebted to the corporation in a considerable sum of money, and his report was confirmed, and the chancellor directed Neville, who was found to owe the larger sum, to pay the difference between his indebtedness to the corporation and Ryman's indebtedness to the corporation over to the receiver thereof.

Several claims were filed in the cause against the corporation and allowed by the chancellor.

The defendant Neville appealed from these decrees and the case has been fully briefed and argued in this court.

The bill herein was signed by the corporation by one Buchanan, who appears to have been its president, although at the time the bill was filed he seems to have owned no stock. It is argued by defendant that this bill to wind up the affairs of the corporation was not authorized by any resolution of the stockholders or directors, and that Buchanan was without any such power.

We think this contention is probably well made, but it is not material, if Ryman was entitled to file a bill to wind up the corporation, since he joined as a party complainant.

The corporation was certainly brought before the court inasmuch as its officers and all parties interested therein were before the court and its property seized and put in the hands of a receiver appointed by the court.

We are of opinion that Ryman was entitled to file this bill.

Ryman and Neville had been in a controversy for some time about the indebtedness of each other to the business. An expert accountant went over the books, and found Neville to be indebted in a larger sum than Ryman. Ryman placed the matter in the hands of an attorney, and the latter called upon Neville to pay in the excess of his withdrawals over Ryman's withdrawals. This angered Neville, and just before the bill was filed he made a violent attack upon Ryman with a heavy stick, inflicting wounds, which made it necessary for Ryman to go to a hospital. Other circumstances appear which indicate bad feeling between the two men, and, each owning one-half the stock, it would have been impossible for them to have continued this business harmoniously and successfully.

Under circumstances like these, where there are such dissensions within the corporation as that its business cannot be honestly or properly managed, a court of equity will intervene at the suit of a stockholder, appoint a receiver, and wind up the affairs of the concern. 3 Cook on Corporations (7th Ed.), section 746; 2 Clark &

Marshall on Corporations, p. 714; 14a C. J. 1124; *State v. Oudin, etc.*, 48 Wash., 196, 93 Pac., 219; *Green v. National Advertising, etc., Co.*, 137 Minn., 65, 162 N. W., 1056, L. R. A., 1917E, 784. In *O'Connor v. Knoxville Hotel Co.*, 93 Tenn., 708, 28 S. W., 308, it was declared that whenever it appears impossible to attain the objects for which a corporation was formed and that failure is inevitable the chancery court may, at the suit of stockholders, order its affairs to be wound up and its assets distributed.

We think the holding above taken from the text-writers and cases from other States is but an application of the rule laid down in *O'Connor v. Knoxville Hotel Co., supra*. When dissension among those in charge of a corporation gets too bad, it is necessarily impossible for the corporation to attain the objects for which it was formed and failure is inevitable.

Defendant insists that a corporation can only be dissolved upon suit of the State or by following certain statutory procedure. This is doubtless true when it is sought to accomplish a *de jure* dissolution. A *de facto* dissolution or winding up of a corporation's business and distribution of its assets may, however, be effected through the chancery court in other suits. This distinction is noted in *Parker v. Bethel Hotel Co.*, 96 Tenn., 252, 292, 34 S. W., 209, 31 L. R. A., 706, and see, also, 14a C. J., 1081. *O'Connor v. Knoxville Hotel Co., supra,* furnishes abundant authority here.

What we have said disposes of the first four assignments of error.

The fifth error assigned is that—"The chancellor erred in not sustaining the defendant's exceptions to the clerk and master's reports filed in the cause, and in confirming said reports as follows."

Following this language are set out several reports, exceptions thereto, and extracts from decrees, making the fifth assignment cover 16 pages of the brief. This assignment of error is, of course, too general, and cannot be considered by us.

The sixth assignment is to the effect that the chancellor erred in allowing some five claims against the corporation. No reference is made to any portion of the record showing evidence which indicates the error complained of. The only reference is to the report allowing these claims and the decree confirming said report. This assignment is accordingly overruled.

The seventh assignment complains that the chancellor erred in taxing defendant with the costs of the cause. We think this assignment is well taken. The cost below should have been divided between Ryman and Neville.

The eighth assignment of error is disposed of by what we have heretofore said.

The ninth assignment is that the chancellor erred in ordering a certain boat and other assets belonging to the corporation to be sold. The sale has already been accomplished, and this assignment raises no practical question.

The tenth assignment of error is too general in its terms.

The eleventh assignment of error objects to the scope of the references to ascertain the indebtedness owing to the corporation. This case has to go back, and upon a proper showing the chancellor will no doubt make orders necessary to recover anything else that may appear to be coming to the corporation.

The twelfth assignment of error fails to refer to any evidence indicating error on the part of the chancellor in allowing the claim objected to.

The thirteenth and fourteenth assignments of error challenge concurrent finding of the master and chancellor upon questions of account. Such findings we cannot undertake to review. There is evidence to sustain these findings. The books and papers of the corporation were gone over by expert accountants. It is said in one of the briefs that there was a truckload of such documents.

In *State ex rel.* v. *Follis*, 140 Tenn., 513, 205 S. W., 444, this court announced the following rule: " 'When the facts sought to be proved are of such a character, and the papers are so voluminous or numerous, that the examination thereof during the trial would consume much time, and it would be difficult for the jury' (and we may add for the court) to understand and reach the necessary result, the rule requiring the production of the papers themselves is so relax that the court may, in its discretion, permit a competent witness, who has examined the papers with reference to the points sought to be established, to testify to the result of such examination. 2 Encyc. Ev., p. 284, citing cases from Califor-

nia, Connecticut, Iowa, Louisiana, Maryland, Minnesota, Missouri, Nebraska, and Texas.''

The conclusions of the master and the chancellor herein are sustained by the report of the expert accountants. These gentlemen gave their depositions several times, and the master personally examined them and had the books and papers before him as well.

We cannot undertake to go into these matters. Such labors are not to be expected of this court, and in fact the court is not qualified to undertake them.

As to the alleged failure on the part of the court below to credit defendant with all of a deposit made in the State Bank & Trust Company and with all sums paid to Jolly Hard, clerk, by Neville, there is evidence to sustain the concurrent finding of the master and chancellor. The expert accountant expressly testifies that he did give Neville credit for the deposit made in the State Bank, with the exception of $250, which was afterward credited. Although the ledger of Hard was not before the expert accountants, it was before the master, and from that ledger he concluded that Neville was only entitled to the credit allowed him, and not to the sum now claimed.

The costs of this appeal will be paid by Neville, and the cause remanded to the chancery court for further proceedings.