J. E. WOOD, et al., v. MYERS PAPER COMPANY, et al.

Western Section.  June 25, 1926.

No petition for Certiorari was filed.

1. **Corporations.** A corporation will not be dissolved because of discord among stockholders and directors where the discord is caused by a minority.

In an action to have a corporation dissolved because of discord among stockholders and directors where the evidence showed that the only discord was caused by complainant, a minority shareholder and also a director and who was also a director and the owner of a competitor company, held that the dissension was not of such a nature as would justify a dissolution of the corporation.

2. **Corporations.** A corporation will be dissolved if dissension among stockholders or directors makes it impracticable to continue the corporation.

Where the dissension between stockholders and directors is serious and there is an approximate equal division among the contending stockholders and directors and where it would seriously interfere with the operation of the corporation, held the court is justified in dissolving the corporation.

3. **Corporations. Officers who are also directors are entitled to vote on the salaries of the officers.**

In corporations where the officers are also members of the Board of Directors they are entitled to vote on the salaries of the officers since in small corporations all of the directors often are also officers.

4. **Corporations. Salaries of officers not retro-active.**

Where the salaries of the officers of a corporation have been fixed for a given time, the directors at a subsequent meeting cannot raise the salaries and make the action retro-active. Any increase in salaries made by the directors can only take effect from the date of the action of the Board of Directors in making the increase.

5. **Corporations. Court will not interfere with salaries fixed by the board of directors unless the power has been abused.**

In an action by a stockholder to require officers to repay to the corporation a part of their salaries fixed by the Board of Directors, held the court will not interfere with the power of the Board of Directors to fix salaries unless the evidence shows an unreasonable salary and abuse of the power upon the part of the directors.

6. **Corporations. Officers' salaries found not exorbitant.**

In an action to require officers to re-pay a part of their salaries on the ground that the Board of Directors had allowed an exorbitant salary, held the evidence showed the salaries not unreasonable.

7. **Corporations. Stockholders ordinarily have a right to examine corporation books and records at a reasonable time.**

Ordinarily any stockholder has a right to examine the books and records of the corporation at any reasonable time during business hours and the stockholder has a right to enforce this privilege.

8. **Corporations. Exception to stockholder's right to inspect books and records of corporation.**

In an action by a stockholder to recover money expended in making an examination of the corporation books and records where it was shown that the stockholder was operating a business in competition to the corporation and was holding stock in the corporation for the sole purpose of being able to gain valuable information from the records of the corporation to aid him in competition with it, held that such circumstances constituted an exception to the general rule that stockholders of the corporation may examine the records; that the officers of the corporation were justified in refusing the stockholder the privilege of examining the books and records of the corporation; and that he could not recover the money expended to examine them.

Appeal from Chancery Court, of Shelby County; Hon. D. W. DeHaven, Chancellor.

Affirmed.

W. C. Rodgers, of Memphis, for appellant.

Canada & Williams, of Memphis, and E. L. Learner, of Memphis, for appellee.

SENTER, J. The original bill was filed in this cause by J. E. Wood as a minority stockholder in the Meyers Paper Company, et als, a corporation, seeking to have the affairs of the corporation wound up and liquidated, and a receiver appointed and seeking certain relief against certain officers and directors of the corporation

and for other purposes unnecessary to review. Among the material allegations contained in the bill, it is charged that owing to the incompetent, reckless and fraudulent mismanagement of the business of said corporation by the directors that it was in danger of failure and loss to the complainant; that the defendant directors were individually insolvent, and that they had been guilty of gross fraud, bad faith, mismanagement, conversion and diversion of the corporate funds and assets, and that the said officers of said corporation and the directors owned all the capital stock of the corporation except the shares of stock amounting to $5,000.00 owned by complainant. It is further alleged in the bill that there existed serious dissension between said directors and said stockholders and particularly the complainant. It is further alleged that complainant had been denied his legal rights as a stockholder, and had been denied the privilege of seeing the books and records of the corporation, and of reviewing the acts of the directors and officers of said corporation and the manner in which its assets were being handled. It is further alleged by complainant in the original bill that he was induced to invest in the capital stock of said corporation by misrepresentations made to him by the officers and directors of the corporation as to the financial condition, management, operation and conduct of said business. And as a further inducement he was to be provided with a responsible position in the corporation, and that after becoming a stockholder he was given employment, and continued in the employment of the corporation until he discovered the misrepresentations and mismanagement of the officers and directors and began to make protest, when he was discharged from his position by the officers of the corporation, and that after his dismissal he was denied the privilege of a stockholder to see and examine the books, records and files of the corporation. The bill then alleges a number of alleged facts with reference to the incompetency and fraudulent mismanagement and alleged dishonesty of the officers and directors of the corporation, and of the wrongful misappropriation of the funds of the corporation and diversion and conversion of the funds and assets of the corporation, all of which are enumerated in detail in the bill. The prayer of the bill asks that a receiver be immediately appointed and placed in the control of the corporation's business and affairs, and that the defendants be excluded from the business until the final hearing of the cause; that the business and affairs of the corporation be wound up, and creditors paid, and the balance of the assets be distributed among the stockholders; that the officers and directors of the corporation be required to account, and that the interests of the parties be declared. The bill further prays that writ of mandamus issue requiring the officers and directors to grant complainant access at

reasonable times during business hours to the books, records and properties and business of the corporation; that complainant have and recover from the defendants the sum of $1,005.00, the amount expended by complainant in procuring an examination and investigation of the business.

The defendants answered the bill, denying all material allegations, and especially all allegations with reference to fraud, mismanagement or misconduct in connection with the business, and alleging in the answer that complainant J. E. Wood was actuated by improper motives; that complainant J. E. Wood left the employ of the corporation, and entered into the same line of business as a competitor.

At the hearing of the cause the chancellor denied the application for a receivership, and determined the issues in favor of the defendants, with the exception of certain overdrafts and retroactive salaries, which applied to the complainant as well as certain of the defendants, and decreed that the amount received as alleged retroactive salaries, and the overdrafts due to the corporation by certain of the parties be paid in to the corporation. There is contained in the record a very full and comprehensive finding of facts by the chancellor, and also an opinion supporting the decree.

From the decree of the Chancellor, except so much thereof as referred to the retroactive salaries received, and the overdrafts, and requiring the same to be paid, the complainant appealed to this court and has assigned four errors, as follows:

1.

"The court erred in failing to find the corporate officers incompetent and guilty of such fraud and mismanagement, misuse and diversion of corporate funds and assets, and the existence of such dissension, as to require the dissolution of the corporation, including the distribution of its assets—it being apparent that under the existing circumstances, the object and purpose for which the corporation was created could not be accomplished."

2.

"The court erred in not allowing a recovery from individual defendants of additional portions of salaries and corporate funds, wrongfully received and appropriated by them.

3.

"The court erred in refusing complainant a recovery of the $1,005.00, paid auditors, for investigating the books and records of the corporation, which was forced on him by a refusal of his rights to personally review same."

4.

"The court erred in not finding the corporation and officers insolvent."

As to the first assignment of error it is contended for complainant that the officers and directors of the corporation are guilty of such fraud and mismanagement and misuse of the funds and assets of the corporation, coupled with the existence of dissension among the stockholders, and especially between complainant and the officers and directors of the corporation, that the object and purposes for which the corporation was created cannot be accomplished, and that a receivership is necessary to the protection of complainant, the creditors and all concerned.

There has been a great deal of evidence taken in the case by the respective parties. It appears that complainant Wood bought $5,000.00 stock in this corporation in May, 1922. The corporation was organized in August, 1919, under the name of the Atlas Paper & Bag Company, with an authorized capital of $25,000.00. In August, 1920, the charter was amended changing the name to its present corporate name, Myers Paper Company, and the capital authorized increased to $50,000.00. The capital stock of the original corporation, Atlas Paper & Bag Company, was owned and held as follows: M. B. Myers $10,000.00; Harry Rosenson, $10,000.00; I. L. Myers, $5,000.00. At a subsequent date M. B. Myers acquired of Harry Rosenson, $8,000.00 of the Rosenson stock, and Mrs. Sarah Myers acquired the remaining $2,000.00 of the Harry Rosenson stock. When the capital stock of the company was increased by the amendment of the charter in August, 1920, M. B. Myers, on May 1, 1923, acquired $5,000.00 of the additional stock; I. L. Myers acquired $5,000.00 of the additional stock on May 1, 1923, and the complainant acquired his $5,000.00 of the stock on May 30, 1922. At the time the bill was filed the Board of Directors of the company was composed of M. B. Meyers, I. L. Myers, Mrs. Sarah Myers, Mrs. Ida Myers and Asher Myers. The officers of the corporation were M. B. Myers, President, Mrs. Sarah Myers, Vice-President, and I. L. Myers, Secretary and Treasurer. It does not appear that Mrs. Ida Myers and Asher Myers owned any of the stock of the corporation. The record also shows that in July, 1922, after complainant had become a stockholder to the amount of $5,000.00, he was employed as a city salesman for the corporation, and continued in that capacity until November 24, 1923. On the day following complainant Wood went into the paper business on his own account and became a competitor of the Myers Paper Company, and was so engaged as a competitor of the Myers Paper Company at the time this suit was tried.

We have reviewed the record with reference to the evidence on the subject of fraud and mismanagement on the part of the officers and directors of the corporation. As above stated a great many witnesses were examined, and the evidence is contained in the record. Without attempting to review this mass of evidence in detail, after giving it careful consideration, we are of the opinion that the contention of the complainant to the effect that the officers and directors of the corporation had been guilty of fraud and mismanagement is not sustained by a preponderance of the evidence. There were some irregularities, but not sufficient proof of fraud or mismanagement. It would be difficult, if not almost impossible, for any business of this character to be so operated and conducted as to be absolutely free from all irregularities. The business appears to have been in a reasonably prosperous condition at the time the bill was filed. It is true, as is shown by the record, that this business like others of similar character, experienced some bad seasons, but taken as a whole, we think it clear that the business has not suffered because of the misconduct of the officers and directors, or because of incompetency of those in control. The record shows M. B. Myers, the President of the Company, to be a man of broad experience in this line of business; that he had several years experience in the paper business with other paper concerns before the organization of the Myers Paper Company and the predecessor in name, the Atlas Paper & Bag Company. He is shown by several witnesses to be a man of good character and a capable business man. The irregularity, and perhaps unwarranted acts of directors in making the increase in salaries retroactive, and overdrafts of employees and officers, do not appear to have been acts of willful misuse of authority, or such misconduct as would sustain a charge of fraud. On the subject of the alleged discord among stockholders and directors, we concur in the conclusion reached by the chancellor. It appears that the only discord is between the defendants and the complainant. The complainant is only one stockholder, and is only connected with the business of this corporation as a stockholder and is a competitor in business of this corporation. This discord appears to be the result of the refusal of the president of the corporation to permit the complainant, a competitor in business, to have full access to the books, invoices, records, customers accounts and inventory of the business after the complainant severed his active connection as an employee of the corporation, and went into business for himself. Without, at this time, entering into a discussion as to the rights of the complainant in that regard, we are of the opinion that it is not such discord as would entitle the complainant to have the corporation dissolved and the receivership granted.

The corporation appears to be solvent and a going corporation, and in a fairly prosperous condition.

While there are instances in which serious dissension among stockholders or the Board of Directors would warrant a dissolution of a corporation or the appointment of a receiver to take charge of and liquidate its affairs, in every case that we have examined where a receivership has been granted, or a dissolution of the corporation, on account of dissension among stockholders, or directors and stockholders, it appears that there was an approximate equal division among the contending stockholders or directors, and where a situation has developed that it would be impracticable, and to the serious prejudice to the future of the corporation to undertake to continue its operation. Complainant has cited in support of the contention made by him, the case of Nashville Packet Co. v. Neville, 144 Tenn., 698. In that case it appeared that the stock was owned in equal shares by Ryman and Neville. The facts of that case as stated in the opinion were as follows:

"Ryman and Neville had been in controversy for some time about the indebtedness of each other to the business. An expert accountant went over the books, and found Neville to be indebted in a larger sum than Ryman. Ryman placed the matter in the hands of an attorney and the latter called upon Neville to pay in the excess of his withdrawal over Ryman's withdrawal. This angered Neville, and just before the bill was filed he made a violent attack upon Ryman with a heavy stick, inflicting wounds, which made it necessary for Ryman to go to a hospital. Other circumstances appear which indicate bad feeling between the two men, and each owning one-half the stock, it would have been impossible for them to have continued this business harmoniously and successfully.

"Under circumstances like these, where there are such dissensions within the corporation as that its business cannot be honestly or properly managed a court of equity will intervene at the suit of a stockholder, appoint a receiver, and wind up the affairs of the concern."

In the case of O'Conner vs. Knoxville Hotel Co., 93 Tenn., 708, it appears that the case was disposed of on demurrer. It was alleged in the bill, and contended for the complainant, that the corporation had ceased and failed to use its franchises for a number of years; that the object for which the charter was obtained was to erect, keep and furnish a hotel, and nothing had been done in that direction except the taking of the subscriptions and buying the property soon after it was organized. Other allegations were made in the bill, but the principal allegations were to the effect that the hotel had not been built as contemplated, and that the hotel proved

to be a failure; that the whole plan was impracticable in its conception and manifestly incapable in its execution; that only $72,000:00 of stock had been subscribed and that it was the purpose to erect a $200,000.00 hotel that was to possess all the attractions and conveniences of modern hotels, etc.  It was said by the court in that case, quoting Morawetz on Corporations, 2nd Edition, Sec. 283: "If shareholders in a corporation disapprove of the management, or consider their speculation a bad one, their remedy is to elect new officers, or to sell their shares and withdraw.  They cannot insist on having the company's business closed, and assets distributed, against the will of a single stockholder who wishes to have the business continued.  It is clear, therefore, that the courts cannot interfere at their suit, and order the company to be wound up."  The court then continues, "While this is a general rule, the same author states an exception to it as follows: 'Whenever, in the course of events, it proves impossible to attain the real object for which a corporation was formed, or when the failure of the company has become inevitable, it is the duty of the company's agents to put an end to its operations and wind up its affairs.  Under these circumstances, the majority would have no right to continue to use the common property and credit for any other purpose, because it would be impossible to use them for any purpose authorized by the charter.'  . . .  "The same author, Morawitz on Corporations, 2d Ed., Sec. 285, says: "However, before the courts can thus interfere with the management of a corporations and order its business to be wound up, it must be shown very plainly that the business cannot possibly be carried on any further without a departure from the company's charter; and a court of chancery cannot impair the discretionary powers conferred upon the majority by the charter, and decide on their behalf whether the continuance of the enterprise be advisable as a commercial speculation."

On the subject of dissensions among stockholders, we find this statement of the rule in Tardy's Smith on Receivers, 2nd Edition, Vol. 1, page 720:

"Dissensions among the stockholders or the members of the Board of Directors may lead to the appointment of a receiver.  Such a situation can exist usually only when there is an equal or nearly equal division of the stock between the contending parties.  The courts, in appointing receivers in this situation of affairs have frequently relied upon what they characterize to be an analogy between business corporations and partnerships.  To warrant the appointment of a receiver, the dissensions must be of such a serious character as to have led to a practical dead-lock in the management of the business, the cessation of the business and consequent loss and injury to the

property and goodwill of the corporation; and it must appear that the wrongful situation will continue unless the court intervens to straighten out the muddle.''

In Volume 2, 1924 Supplement, Fletcher on Corp., page 1445, is contained the following rule:

"A receiver may be appointed at the instance of minority stockholders in a proper case, but the power should be exercised with the greatest caution and only in the plainest cases. A receiver will not be appointed at the instance of a stockholder in a suit in which he alleged mismanagement of its affairs, etc., where it would injure the corporation and its creditors, and, according to his allegations, the corporation is so deeply in debt that he can have no possible interest in its assets.''

In Vol. 10, Sec. 5234, 1921 Supp. (Fletcher) it is said:

"A receiver should not be appointed in a doubtful case. Where the appointment of a receiver will do the person seeking a receivership no good and it will do a great injury to others, a receivership should be denied.''

We think the rule well settled that the courts should exercise the power to appoint a receiver with great care and caution, and only in cases of emergency, or where the ends of the corporation cannot be further carried out, or where there is such fraud and mismanagement of the corporation, acquiesced in or concurred in by the officers and directors owning the control of the corporation, and this would be of doubtful expediency where the complainant minority stockholder can sell his stock without personal loss. As above stated in this opinion we do not find from the record that the officers and directors of this corporation have been guilty of fraud, willful mismanagement, or misconduct, such as to entitle or warrant a dissolution of the charter or the appointment of a receiver. The first assignment of error is overruled.

The second assignment of error goes to the action of the court in not allowing a recovery from individual defendants of additional portions of salaries of officers, and of corporate funds wrongfully received and appropriated by them. Under this assignment of error it is contended by appellant, first, that under the by-laws of the corporation salaries must be fixed by the Board of Directors before the election of officers. It is also contended that the officers would not have the right to vote as directors to fix their salaries as officers, either before or after complainant became interested. It appears from the record that the Board of Directors fixed the salaries of the officers. We cannot agree to the proposition that officers of the corporation who are directors cannot vote to fix the salaries. It often occurs, especially in close corporations, where the

stock is owned by a limited number of stockholders, that all of the stockholders are both directors and officers. In this situation the officers who are also directors would have to fix the salaries, as there is no other agency provided for the fixing of the salaries of officers and employees except the Board of Directors. The chancellor very properly decreed that when the salaries have been fixed for a given time that the directors cannot at a subsequent meeting raise the salaries so as to make the action retroactive, and any increase in salaries made by the directors could only take effect from the date of the action of the Board of Directors in making the increase. We think the chancellor was correct in so holding. Under this assignment of error it is also insisted by appellant that the salaries for the President and Secretary as fixed by the Board of Directors, at $500.00 and $300.00 per month, respectively, were excessive and exhorbitant. The Board of Directors are authorized to fix the salaries of officers and employees, but where, as in the present case, the directors are also the officers of the corporation the matter of salaries, and of the fixing of salaries, should be reasonable and not excessive. If the directors should so far abuse the power or authority in fixing salaries as to operate as in injustice to the stockholders, and in the instant case the complainant, it is the duty of the court to correct this abuse, and to see that fair and reasonable salaries only are permitted. We have carefully examined all the evidence on the subject of the value of services rendered by these two officials of the corporation. Considering the volume of business, the responsibilities of the respective positions, and the evidence in the record as to the experience and qualifications of these officials, we concur in the conclusion reached by the chancellor that these salaries are reasonable and fair. Under this assignment of error it is contended for appellant that certain expense accounts should be charged back to the account of the officers incurring the same, on the ground that itemized statements of these expense accounts were not filed as supporting vouchers. We know of no rule of law that requires officers of corporations to file itemized statements of expense accounts covering expenses incurred while on the business of the corporation. The correctness of these expense accounts are testified to, and it does not appear that the expense accounts are so unreasonable or exhorbitant as to challenge the credence of the court.

The third assignment of error is to the action of the court in denying complainant to recover of the defendants the sum of $1,005.00 paid by complainant to his auditors for investigating the books and records of the corporation. The employment of the auditor by complainant was his voluntary act. He had become dissatisfied with the management of the corporation. It is true, as contended

for complainant, that he had been denied the right to investigate the books, records, invoices, etc., after he severed his connection with the corporation and had entered into business for himself as an active competitor of the defendant corporation. This presents an interesting question, the right of a stockholder of a corporation to have access to the books and records of the corporation, where the stockholder seeks to exercise the right during office hours and not to the serious inconvenience of the corporation. We think the general rule on the subject is that a corporation cannot willfully refuse to allow a stockholder to inspect and examine the books and records and the business of the corporation at reasonable and proper times. (Cook on Corp., Vol. 2, Sec. 512). The right of a stockholder of a corporation to examine the books and records of the corporation of which he is a member, at reasonable times, is generally recognized, and we think is the general rule. However, the rule has its exceptions. (Lengendre vs. Brewing Ass'n, 12 So., 837; Bourdette vs. Sieward, 27 So., 724). In the last case referred to it appears that the refusal by the corporation officers to permit a stockholder to examine the books did not have any reason for such refusal. In the present case we have a minority stockholder who is a competitor in business and in the same city, seeking to enforce the right of a stockholder to investigate all the books and records, list of customers, accounts, invoices for merchandise of his competitor, and predicates his right on the ground that he is a stockholder in the corporation. It is shown in the record that he had made the statement that he would hold his stock in the corporation, and not sell it, because of the advantage that he would gain as a competitor in exercising his right as a stockholder to obtain information. We think this could only mean that complainant in desiring to examine the books and records of the corporation was actuated by the desire to obtain information concerning the business of his competitor. If he was permitted to exercise this usual right of a stockholder, he could as a competitor, obtain inside information of his competitor's business that would operate to his own advantage, and to the decided disadvantage of the corporation. The chancellor in his finding of facts, and we concur in the conclusion, stated that the complainant had been offered par for his stock, and refused to sell it, and there is considerable evidence in the record to the effect that he wanted $12,000.00 for his $5,000.00 of stock. We cannot escape the conviction under the record in this case that complainant was seeking to exercise the right of a stockholder to examine the books and records of this corporation for his own personal and selfish reasons, and to promote the interests of his own business by obtaining information as to the business of his competitor, and to be used to the disadvantage of the cor-

poration and to his own advantage. There is much in the record that warrants this conclusion. It appears with reasonable certainty that for about thirty days before he discontinued his active connection with the defendant corporation he was quietly, and perhaps secretly, obtaining all the information he could about the business of the corporation; its customers; prices paid for merchandise, etc., with the view of going into the same line of business for himself. On the day following the severance of his active connection with the defendant corporation, he did open up business as a competitor of the defendant corporation in the same city. These facts, and the further fact of his statement to the effect that he wanted to hold his stock in the defendant corporation so that he could have access to its books and records, is a very clear indication that his real motive and purpose in wanting to examine the books and records of his competitor, under his assumed right as a stockholder, was that he could personally profit thereby, and obtain an advantage prejudicial to the corporation. In this view of the case, we are of the opinion that the officers of the defendant corporation did not willfully deny complainant the right which he demanded to examine the books and records. To have done so would have been to the disadvantage of the corporation. The protection of the corporation and the other stockholders rendered it important, if not necessary, that this information be not given to complainant to be used by him to the injury and prejudice of the corporation.

In the case of Lengendre vs. Brewing Ass'n, supra, it is thus expressed by the court: "Tho the right to inspect is the rule, and it is very seldom proper for the officers of a company to refuse to allow the examination, the refusal is justifiable when curiosity is the motive, or when the object is manifestly in opposition to the interests of the company."

We are therefore of the opinion that the third assignment of error is not well taken, and the same is overruled.

The fourth assignment of error complains at the finding of the chancellor to the effect that the corporation and officers were not solvent.

We think by a decided preponderance of the evidence the corporation is solvent, and in this view of the case it is perhaps immaterial whether the officers are solvent or insolvent. However, we concur in the finding of the chancellor that the corporation and officers were solvent.

It results that all assignments of error are overruled and disallowed and the decree of the chancellor is affirmed. Appellant and surety on the appeal bond will pay the costs of this appeal.

Heiskell and Owen, JJ., concur.