AMERICAN NAT. BANK v. TINSLEY MILLINERY CO.—100 S. W. (2d) 665.

BAIRD et al. v. SAME.

Middle Section. July 25, 1936.

Petition for Certiorari denied by Supreme Court, January 16, 1937.

W. J. Smith, of Franklin, for appellants Partlow et al.

Pitts, McConnico, Hatcher & Waller, of Nashville, for appellee Bank.

Louis Leftwich and Norman R. Minick, both of Nashville, for appellees Bernice Cato Baird et al.

Bailey & Davies, of Nashville, for appellee, Hewitt C. Davis.

CROWNOVER, J. These two suits were consolidated by consent. The first suit was a general creditors' bill filed by the American National Bank against the Tinsley Millinery Company, on April 27, 1932; and the second, a suit, filed on August 31, 1932, by the paid up stockholders of the Tinsley Millinery Company against the stockholders who were indebted to the Company in large amounts on stock subscriptions, seeking the recovery of such amounts to be applied to the payment of the indebtedness of the corporation and thereafter to distribution among themselves.

The Tinsley Millinery Company, in Nashville, was a women's ready to wear and millinery store. It had been in operation for many years. The stockholders and the number of shares owned by each were as follows:

| | | | | | |
|---|---|---|---|---|---|
| J. D. Partlow | 132 | Shares preferred, | 576 | Shares common. | |
| O. D. Kirk | 106 | " " | 600 | " | " |
| Mrs. G. A. Penuel | 67 | " " | 525 | " | " |
| Lon Gwaltney | 20 | " " | 125 | " | " |
| F. B. Stroud | 15 | " " | 125 | " | " |
| Mrs. W. L. Beck | 15 | " " | | " | " |
| Bernice Cato Baird | 7 | " " | 52 | " | " |
| C. K. Barnett | 20 | " " | 57½ | " | " |
| Mrs. R. W. Comer | | | 5 | " | " |
| Mildred E. Baird | 8 | " " | 53 | " | " |

The stock owned by Mrs. Bernice Cato Baird, Mildred E. Baird, and C. K. Barnett was paid for in full. The other stockholders were indebted to the Company on stock subscriptions and open accounts in the following amounts:

| | On stock | open account | total |
|---|---|---|---|
| J. D. Partlow | $ 6,000.00 | $ 66,772.08 | $ 72,772.08 |
| O. D. Kirk | 7,000.00 | 33,086.82 | 40,086.82 |
| Mrs. G. A. Penuel | 5,000.00 | 4,238.75 | 9,238.75 |
| Lon Gwaltney | 1,000.00 | 10,070.53 | 11,070.53 |
| F. B. Stroud | 1,250.00 | 9,169.41 | 10,419.41 |
| Mrs. W. L. Beck | | 1,022.13 | 1,022.13 |
| | $20,250.00 | $124,359.72 | $144,609.72 |

The Company owed the American National Bank $60,000 on notes and owed to creditors for merchandise $12,000.

It owned a lot and building on the southwest corner of Church street and Seventh avenue, on which was a mortgage of $77,500.

In February, 1932, Mr. Maclin P. Davis, vice president of the American National Bank, requested the Millinery Company to have an audit made of its books, which was done. This report showed that the above stockholders were indebted to the Company in the sum of $144,609.72. In previous audits this indebtedness had been carried as "accounts receivable."

On discovering that the stockholders owed this sum to the Company, Mr. Maclin P. Davis had a conference with Mr. Partlow, president of the Company, who informed him (Mr. Davis) that the stockholders were unable to pay this indebtedness.

About a year prior to this Hewitt C. Davis had leased the first floor of the store and installed a ladies' notion business.

The Bank, with the idea of collecting something on its debt, conferred with Hewitt C. Davis, and a scheme was arrived at by which Hewitt C. Davis should put $35,000 cash into the business, of which the Bank should receive $20,000, in return for the stock of Partlow and others.

In arriving at the amount of $35,000, they valued the accounts at $20,000, the inventory at $25,000, and the building at $125,000.

On April 12th Mr. Maclin P. Davis called a meeting of Partlow and the other stockholders who owed the Company and stated to them that the Company was insolvent and faced with bankruptcy, but he had a party who would undertake to reorganize and refinance the Company; and that, if they would all surrender their stock, their indebtedness would be canceled, and the Company would be reorganized.

A resolution was passed by the board of directors of the Tinsley Millinery Company approving the surrender of the stock and the cancellation of the indebtedness and ratifying a contract to that effect made by Partlow and others with the Tinsley Millinery Company. Partlow and others then signed an agreement with the Tinsley Millinery Company agreeing to surrender their stock in consideration of the cancellation of the indebtedness, and delivered said agreement to the American National Bank, together with the certificates representing their stock.

It was next moved and seconded that said stock should not be canceled at that time but be placed with the Bank in escrow pending final negotiations.

The stock was delivered to the Bank.

At the same time Partlow and others resigned as directors and officers of the Company and Hewitt C. Davis was elected president, Maclin P. Davis, vice president, and other persons selected by Hewitt C. Davis and by the Bank were elected as directors.

Hewitt C. Davis immediately took an inventory, which showed that the merchandise was of the value of $7,182. This merchandise had been carried on the books of the Company as of the value of $46,-247.27. Maclin P. Davis testified that Hewitt C. Davis withdrew his proposition after seeing the inventory.

On April 25, 1932, at a meeting of the stockholders, it was announced that the financing plan had fallen through. A lease of the building and a contract for the sale of the merchandise to Hewitt C. Davis were presented to the old board of directors for approval, but the old board refused to approve the same, insisting that they were no longer stockholders or directors. And they insisted that they had been relieved of their indebtedness to the Company.

The new officers and directors sold the stock of merchandise, furniture, and fixtures to Hewitt C. Davis for $7,000, and sold him the accounts receivable for $4,000. The proceeds were applied on the Company's indebtedness. They also negotiated a lease of the building to Hewitt C. Davis.

Hewitt C. Davis organized a new corporation called ''Tinsley's.''

The original bill in this cause was filed by the Bank as a general creditors' bill for the purpose of liquidating the affairs of the Company. It asked that it be filed as a general creditors' bill, for the appointment of a receiver, for a judgment on notes held by it amounting to $60,000, and that judgments be rendered against the defendants J. D. Partlow and others for the amounts due from them to the Tinsley Millinery Company for stock.

After the filing of the original bill, the Bank purchased the stock of one of the minority stockholders, Mrs. Comer, whose stock had been paid for in full, and on May 24, 1932, filed an amended and supplemental bill setting up this fact, and the fact that the Company had been abandoned by Partlow et al.; that a new board of directors had been elected for the sole purpose of carrying out the reorganization plan, which had fallen through.

No answer was filed to either the original bill or the amended and supplemental bill filed by the Bank, by the Tinsley Millinery Company, and a pro confesso against the Tinsley Millinery Company was taken. Order was entered sustaining the bill as a general creditors' bill and a receiver was appointed.

The balance of the property of the Tinsley Millinery Company was sold and distribution was made to the creditors whose claims had been established.

It appears that at some time during these negotiations (at the instance of the American National Bank) minor creditors were paid and their claims were assigned to William Waller, as trustee, and that at the time of the distribution in this cause the creditors were the American National Bank, whose claim was $54,689.45, William

464

Waller, trustee, $12,948.75, and Lavinia Kendall, $1,361.25. It does not appear what payment was made to them in the first suit.

On May 14, 1932, Partlow et al. filed an answer and cross-bill, insisting that they had been relieved of their indebtedness to the Company, and that, if they were mistaken in this, said Bank had assumed their indebtedness; that they were no longer stockholders or debtors. They denied that said plan of reorganization was contingent upon the value of the inventory. They alleged that, as the Bank had disposed of the merchandise pursuant to the terms of the contract, it was estopped to maintain the bill to collect said indebtedness. They prayed that the contract be specifically enforced or for damages against the Bank and Hewitt C. Davis.

The American National Bank·answered the cross-bill, insisting that the agreement was predicated upon the condition that the financial status of the Company was as reflected in the audit of January 1, 1932, and that the written proposition delivered to Partlow by the Bank was merely a memorandum and not a formal proposition or offer, and not signed, and that the stock was delivered in escrow.

On August 31, 1932, Bernice Cato Baird, Mildred E. Baird by next friend, and C. K. Barnett, paid-up stockholders of the Tinsley Millinery Company, filed their original bill against the Tinsley Millinery Company, J. D. Partlow, Lon Gwaltney, F. B. Stroud, and Mrs. W. L. Beck, asking for decree in favor of the Tinsley Millinery Company against said defendants for the amounts due from them on stock subscriptions; that such recoveries be applied to payment of the indebtedness of the corporation, and thereafter distributed to them. The bill alleged that the Tinsley Millinery Company did not have sufficient assets, exclusive of the debts owing by defendants, to pay the Company's debts; that the Company had ceased to do business and was not engaged in business, and that none of the officers or controlling stockholders were in charge of the business, but that same was simply allowed to drift; that said defendants had attempted to cancel their indebtedness to the Company but that said action was invalid; that complainants had made demand upon the directors and officers to take action against said stockholders; that this bill was filed to recover said indebtedness. The bill prayed that decree be entered against each of said defendants.

On January 20, 1933, the bill was amended to allege that the attempted cancellation of said indebtedness was wholly invalid, for the reason that it was a scheme between a large corporate creditor and said stockholders by which the former was to receive control of the company and the directors, and said directors were acting in their own interest.

Partlow, Gwaltney, Stroud, and Mrs. Beck filed answer and cross-bill in which they admitted their indebtedness but sought a recovery

over against the American National Bank and Hewitt C. Davis to the extent that they were called upon to pay anything by reason of such indebtedness, on account of the agreement made by said Davis and the American National Bank. They further alleged that said Bank agreed to "take care of the other stockholders of the Company."

Bernice Cato Baird et al. answered the cross-bill and denied that said stockholders were relieved of said indebtedness.

The two causes were consolidated by consent.

The Bank and William Waller, trustee, waived their claims against the Millinery Company.

The chancellor found that Bernice Cato Baird, Mildred E. Baird, and C. K. Barnett made no representations to Partlow et al., and were not bound by what was done by the American National Bank or Hewitt C. Davis; that "all the agreements and proceedings simply indicate that it was represented to these parties that their indebtedness would be cancelled;" but there was no evidence that the American National Bank assumed liability. The court was of the opinion that upon the entire record the defendants J. D. Partlow, O. D. Kirk, Mrs. G. A. Penuel, Lon Gwaltney, F. B. Stroud, and Mrs. W. L. Beck were liable to the extent of their unpaid stock subscriptions for the outstanding indebtedness of Tinsley Millinery Company as shown upon the record, excluding the claims of the American National Bank and William Waller, trustee, and were further liable to Bernice Cato Baird and other stockholders who had paid in full for their stock in proportion to the total stock issued and outstanding after payment of debts.

The cross-bills were dismissed and the cause was referred to the clerk and master to ascertain the unpaid indebtedness, in conformity with said opinion, and their pro rata, for which judgment should be entered against said Partlow et al. in favor of Bernice Cato Baird and other stockholders who had paid their subscriptions in full.

The clerk and, master reported that there was only one debt owing the Company that was then entitled to share in any such recovery, and reported the stock interests and the total amount of stock outstanding, and, upon this report the court first gave judgment against the defendants for the amount necessary to take care of said prior debt, and thereafter gave judgment against each of the respective individual defendants, the same being for that part of the total amounts owing by the individual defendants to the Company that would belong to the complainants as their part of the assets of the Company, according to stock holdings, after payment of debts.

The defendants excepted to said decree and appealed to this court and have assigned errors, which are, in substance, as follows:

(1) The chancellor erred in dismissing appellants' cross-bills.

(2) The chancellor erred in sustaining the original bill of the American National Bank as a general creditors' bill.

(3) The chancellor erred in rendering judgments against Mrs. O. D. Kirk and Mrs. G. A. Penuel.

1. The principal contention of the appellants Partlow et al., is that the American National Bank made a proposition to them that if they would surrender their stock to the Tinsley Millinery Company for cancellation their indebtedness to said Company would be canceled.

The Bank addressed the following unsigned letter to Partlow:

"Mr. J. D. Partlow, President,.

"Tinsley Millinery Company,

"Nashville, Tennessee.

"Dear Mr. Partlow:

"We have a signed proposition by Mr. Hewitt C. Davis for the purchase of the controlling interest in the Tinsley Millinery Company and upon delivery to him of nineteen hundred and forty-two shares of common stock of the Tinsley Millinery Company, and also three hundred and forty shares of the preferred stock of the same company, he will pay for same $20,000.00 in cash on the indebtedness of the Tinsley Millinery Company now existing at the American National Bank, and will also turn over to the Tinsley Millinery Company all of the fixtures and merchandise now owned by Hewitt C. Davis at the Tinsley Millinery Company on the first floor of their building.

"Mr. Davis further agrees that he has been informed of the fact that Mr. J. D. Partlow owns 132 shares of preferred stock and 157½ shares of common stock, and that Mr. Partlow owes the company $72,772.08, that O. D. Kirk owns 106 shares of preferred stock and 600 shares of common and owes the company $41,086.82, that Mrs. G. A. Penuel owns 67 shares of preferred stock and 525 shares of common stock, and she owes the Company $9,238.75, that Lon Gwaltney owns 20 shares of preferred stock and 125 shares of common stock and he owes the company $11,070.53, that F. B. Stroud owns 15 shares of preferred and 125 shares of common stock, and he owes to the company $10,419.41, that Mrs. W. L. Beck owns 15 shares of common stock and owes the company $1,022.13.

"The total amount of stock held by the above named stockholders in 340 shares of preferred and 1,957½ shares of common on which the total indebtedness of the above mentioned parties amounts to $144,609.72.

"Mr. Davis agrees that upon delivery of the number of shares as set forth above owned by each individual, their indebtedness to the company will be cancelled. This agreement, however, is on the

condition that the entire amount of common and preferred stock as set forth in this agreement is delivered."

The proposition set forth in this letter is what the appellants contend was the agreement entered into between them and the Bank, and they rely on same as their defense.

This contention avails them nothing. The Code provides:

"The amount unpaid for any stock due from a subscriber therefor to the corporation shall be a fund for the payment of any debts due from the corporation. The transfer of stock, voluntarily or involuntarily, by any subscriber shall not relieve him from such payment, unless his transferee shall have paid up the balance due on said original subscription." Code, section 4088; Chase v. East Tennessee, V. & G. Railroad Co., 73 Tenn. (5 Lea), 415, 416; Sullivan v. Farnsworth, 132 Tenn., 691, 703, 179 S. W., 317, and cases there cited; 6 Fletcher on Corporations, 7028-7033, section 4095.

"Unpaid subscriptions, when there is a liability as between the stockholders and the corporation, are like any other asset of the corporation when it becomes insolvent, and may be collected, like any other assets, through the interposition of a court of equity, for the purpose of paying its debts; and if the corporation has secretly agreed not to require payment, or if it has released the subscribers without consideration, the agreement or release may be held void as against creditors on the ground of fraud." 6 Fletcher on Corporations, 7033, sec. 4095.

It is not contended that the stock was transferred to Hewitt Davis or the Bank. It is not shown that any transfer of the stock was made on the stock book of the Company. There is no pretense of the sale of said shares from Partlow and others to other persons. The appellants argue that they surrendered the stock to the Tinsley Millinery Company for cancellation, at the Bank's suggestion, and the resolution authorizing this action was passed by themselves— the rest of the stockholders (the paid up stockholders) having no notice of the same. This action was invalid on its face. 6 Fletcher on Corporations, 7033, sec. 4095.

The power to release after a subscription has become absolute lies with all the stockholders, rights of creditors being out of the way. White v. Britton, 5 Tenn. App., 61, 71; Cartwright v. Dickson, 88 Tenn., 476, 12 S. W., 1030, 7 L. R. A., 706, 17 Am. St. Rep., 910; Chase v. East Tennessee, V. & G. Railroad Co., 73 Tenn. (5 Lea), 415.

Such release can be effected alone by the consent of all the stockholders, where the rights of creditors are not involved. Cartwright v. Dickinson, supra; Chase v. East Tennessee, V. & G. Railroad Co., supra; 14a C. J., 619-621.

The other stockholders had a right to demand that every stockholder

should be compelled to pay his shares up according to contract. Cartwright v. Dickinson, supra; Chase v. East Tennessee, V. & G. Railroad Co., supra.

It results that we hold that the chancellor was correct in dismissing the cross-bills of appellants and in decreeing that Partlow and others were liable for their unpaid stock subscriptions, and the Bank's action cannot affect their liability, the Bank not having purchased the stock and assumed all their liability to the corporation.

2. There is nothing in the assignment of error that the court erred in sustaining the original bill of the American National Bank as a general creditors' bill. It is not disputed that the corporation was hopelessly insolvent and had been practically abandoned. All of its stock of merchandise had been sold for $7,000, and the corporation had practically ceased to be a going concern. The Bank as creditor and stockholder was entitled to maintain such a bill. Code, secs. 9358 and 10364; O'Connor v. Knoxville Hotel Co., 93 Tenn., 708, 711, 28 S. W., 308; Nashville Packet Co. v. Neville, 144 Tenn., 698, 235 S. W., 64; Wood v. Myers Paper Co., 3 Tenn. App., 128, 135; Voightman & Co. v. Southern Railroad Co., 123 Tenn., 452, 131 S. W., 982, Ann. Cas., 1912C, 211.

Where it becomes impossible to attain the objects for which the corporation was formed, and failure is inevitable, chancery will wind up its affairs and distribute its assets. O'Connor v. Knoxville Hotel Co., supra; Adams v. Chattanooga Co., 128 Tenn., 505, 161 S. W., 1131.

There is another reason why the creditors' bill may be maintained. A pro confesso was taken against the corporation, as it made no defense, and later the pro confesso was set aside and the corporation filed an answer admitting its insolvency and admitting that it had ceased to be a going concern. Hence it waived the defense and a stockholder cannot thereafter raise the objection. The corporation in no way raised the defense that the creditor was not a judgment creditor.

"A creditors' suit will be entertained by a court of equity, although plaintiffs have obtained no judgment at law where the corporation appears and interposes no objection, but consents to the action taken. And where a general creditors' bill seeking a pro rata distribution among all the creditors of the proceeds of the sale of an insolvent corporation's property is brought, and the corporation answers admitting the insolvency and that it is indebted to plaintiffs in the sums alleged, and the receiver has been appointed for its property, intervening stockholders cannot thereafter raise objection that the suit was not within the jurisdiction of the court of equity, because plaintiffs are mere contract creditors. And this is especially true where it does not appear that the intervener's stock is of any value, or could be made so by the discharge of the receiver and the dismissal of the suit." 14a C. J., 935, sec. 3140; Hollins v. Brierfield Coal, etc.,

Co., 150 U. S., 371, 380, 14 S. Ct., 127, 37 L. Ed., 1113; Union Trust Company v. Southern Sawmills, etc., Co. (C. C. A.), 166 F., 193; Citizens' Bank, etc., Co. v. Union Min., etc., Co. (C. C. A.), 106 F., 97.

■ ■ 3. The third assignment, that the court erred in holding Mrs. O. D. Kirk and Mrs. G. A. Penuel liable, is not well made. The creditors' bill was filed against O. D. Kirk. Mrs. Kirk answered that O. D. Kirk was dead and that she had been appointed his executrix, and had been elected a director of the Tinsley Millinery Company in his place and stead, and she joined with the other defendants in setting up the same defenses as the others did, and filed the cross-bill asking for a specific performance and a cancellation of the stock, and in the alternative for damages. We think she entered her appearance as executrix; hence O. D. Kirk's estate is liable and the decree will be rendered against her as executrix. Gibson's Suits in Chancery, sec. 222; 4 C. J., 1323, sec. 13. It appears that the stock was not transferred on the stock book to her, but Mrs. Kirk took this stock subject to any liability then existing upon it. 14 C. J., 1012, sec. 1567.

"If the individual liability of stockholders for corporate debts is contractual in its nature, it will survive the death of a stockholder and may be enforced against his estate, unless the statute creating it provides a special and exclusive remedy for its enforcement of such a character that it cannot be availed of against the estate." 6 Fletcher on Corporations, 7281, 7282, sec. 4195.

■ It is a well-settled rule that the liability of a stockholder for unpaid subscriptions may be enforced against his estate. 7 R. C. L., 399, sec. 386. The general individual liability of stockholders for the corporate debts is a contract liability, and it is on this ground that it is deemed to survive against his personal representative. 7 R. C. L., 399.

■ Mrs. G. A. Penuel was made defendant to the original creditors' bill, and a decree against her was proper. That bill was amended so as to make it a creditors' and stockholders' bill; hence this assignment must be overruled.

It results that the assignments of errors must be overruled and the decree of the chancellor is affirmed, and decrees will be entered here accordingly. The costs of the cause in the Baird case will be decreed against the defendants as decreed below, but the costs of the creditors' bill will be paid out of the funds of the Millinery Company. The costs of the appeal are decreed against the appellants. The cause is remanded to the chancery court for the settling up of the affairs of the Millinery Company.

Faw, P. J., and DeWitt, J., concur.